SIMEON C. ELLINGTON, plaintiff in error, *vs.* JOSEPH B. | 42  361'
                                                          | 96  468،

DILLARD *et al.*, defendant in error.

When a paper writing was offered for probate and record as the *nuncu-*
*pative* will of a testatrix, dictated and signed by her during her last
sickness, thirty days before her death, and attested by two witnesses:
*Held,* That inasmuch as it did not appear from the evidence in the rec-
ord that the testatrix was *in extremis* at the time of her dictating and
signing said paper writing, or that she was prevented by any sudden
surprise or providential cause, from executing the same in the manner
as required by the laws of this State, said paper writing could not be
established as a *nuncupative* will in the Courts of this State.  McCAY,
J., dissenting.

Nuncupative Wills.   Last Illness.   Before Judge JOHN-
SON.   Muscogee Superior Court.   June Term, 1870.

Simeon C. Ellington's petition, as the propounder of the
paper hereinafter mentioned as the last will of Violet B. El-
lington, was filed on the 27th of March, 1869, and contained
the following averments:   Said Violet B. Ellington, form-
erly of Columbus, Georgia, died at Lipp Spring, Germany,
in the Kingdom of Prussia, on the 3d of October, 1868; she
declared her last will and testament in the presence of three
or more persons, on the 3d of September, 1868, a copy of
which is attached; propounder is the person most largely
interested in said will.   Joseph B. Dillard and others, as
heirs-at-law of said Violet B., filed their *caveat,* upon the
grounds:   1st, said paper was not her will; 2d, it was not
reduced to writing and signed'by her in her lifetime; 3d, it
is not attested and subscribed by three competent witnesses;
4th, she was a native of Georgia, always domiciled in said
Columbus, and had left temporarily, *amino revertendi.*   At
the time of making said paper, and at her death all her es-
tate, real and personal, was in Georgia, and therefore could
be devised only according to the laws of Georgia.   The pa-
per was not made according to the laws of Georgia, in that
there were not three competent witnesses present when it

was made; she did not bid those present, or any of them, to bear witness that the same was her will; it was not made in her last sickness, nor in the house of her habitation or dwelling, nor where she had been resident ten days or more before making the paper; nor was she then surprised or taken sick, being from home; 6th, the application is not made within six months from the date of her death.

This cause was transferred to the Superior Court by appeal. Ellington amended his petition by averring that Violet B., had been domiciled in Georgia till the 1st of January, 1871, and then abandoned her domicil, went to Berlin, Germany, and was domiciled there for two years; that she made said will and deed, as aforesaid; that said paper was her will, of full force at her death, it being made according to all the forms of law prescribed for making wills at said Lipp Spring; that afterwards, to-wit, on the ...... day of ........., 1869, at Paderborn, in Germany, said will was duly proven and admitted to record, according to the laws of that place; at the time of her death, and of said probate, said Violet B. had, and yet has personalty worth $5,000 00, and many of her legatees reside in said county of Muscogee. And he produced a copy of the records and prayed to probate said paper as Violet B.'s will in said Superior Court.

By yet another amendment he averred that she was a native of Georgia till she was twenty-five years old; that on the 1st day of January, 1867, she left her home, went on a trip to Germany, remained at Berlin two years, went to Lipp Springs, where she was taken sick with a fatal disease, being away from home; on the 3d of September, 1868, she dictated her last will in the presence of three witnesses, and died on the 3d of October, 1868, never having recovered of said sickness, and said will so dictated was reduced to writing within thirty days from said dictation. She had $5,000 00 worth of property in said county of Muscogee. And he prayed the probate of the paper as her nuncupative will. It is well to note that Violet B. is called Isabella in the papers.

On the trial, the propounder introduced and read to the jury a writing, containing certain facts agreed upon by the parties as testimony in said cause, which writing so agreed to and read to the jury, is in letters and figures, as follows, to-wit:

" SIMEON C. ELLINGTON, *propounder of the will of* V. B. ELLINGTON, *vs.* JOSEPH B. DILLARD, JOHN P. DUNCAN *et al.*

"*Caveat to will, in Court of Ordinary of Muscogee county.*

" The following facts are agreed to by all the parties to the above case, and the same may be used in evidence by any of the parties, in any Court where the same may be tried, till the final determination of said litigation, to-wit:

" That the said Isabella Ellington and her sister Annie were natives of the State of Georgia, where they resided till of age. That in the year 1866, they both went to Berlin, in Germany, for the purpose of completing their education, (with the intention of returning to Georgia when their education should be completed,) and for this purpose they remained in Berlin eighteen months.

"That, in June, 1868, the said Isabella being in bad health, went to Lipp Springs, in Germany, and on the 3d day of September, 1868, she was informed by her physician that she had the consumption and could not live long; was then confined to her room and bed, and on the 3d day of October, 1868, she died, having never recovered from said sickness; that her sister, Annie, died before she did. That on the said 3d day of September, 1868, she invited to her room one Spanken and one Sauerland ; and one Gertrude Schlosser, who was her female attendant and nurse, was also present, in the same room, during the entire transaction, and then and there, in the hearing and presence of the said three witnesses, she expressed her purpose to make her will; and then and there she dictated the several items in said paper, purporting to be:

her will, and the same were then and there reduced to writing by the said Spanken and Sauerland, who signed the said paper as official witnesses, and the said Isabella then and there signed her name to the same.   All of which testamentary dispositions appear upon said writing : That the said writing speaks the truth, with the recitals therein, in reference to the facts therein recited ; that the said writing was executed, in substance and form, according to the laws of force in that part of Germany where the same was executed, and, by the laws of that country, would be a good testamentary disposition of real and personal property located in that country ; that said will has been proven and admitted to record, according to the laws of that country ; that said writing, now of file in the Ordinary's office, may be read in evidence, for what it is worth, and be considered as the original will ; that the property conveyed by said will, except the specific bequests in said paper mentioned, consists of lands and railroad stocks, located in the State of Georgia, and also some personal property, not above mentioned, also located in Muscogee county, Georgia."

And thereupon the propounder introduced and read to the jury the said writing, purporting to be the will of V. B. Ellington, with all the recitals therein which is in the words and figures as follows :

PROCEEDINGS HELD AT THE LIPP SPRINGS WATERING PLACE HOTEL, ("CUR HOUSE") SEPTEMBER 3D, 1868.

The undersigned judicial committee, appointed by order of the Superior Court of this district, have conveyed themselves hither for the purpose of making, in conformity with her request, an official record of a will, intended to be made by Miss Isabella Ellington, residing at Columbus, Georgia, at present, sojourning in this city, in order to obtain sanitary relief at the springs.

The manager of the springs, Mr. Drevermann, of this place, personally known to the committee, introduced the

latter into Miss Ellington's room, making at the same time, the following explanations: Miss Ellington has been living at the Watering Place Hotel ("Cur House") for the last ten weeks; has registered her name as "Isabella Ellington, from the State of Georgia," and I have not the slightest reason to doubt her being the person she declares herself to be.

No other means of identifying this lady were available, Mr. Dreverman (manager of the springs) has approved, by his signature, this paragraph of the proceedings.

"ADMINISTRATOR DREVERMANN."

Miss Isabella Ellington was, to all appearances, an invalid, and confined to her bed. By a preliminary conversation with her, the committee have, however, become fully convinced, that in regard to her mental condition, she was perfectly able to make dispositions by will. She is also familiar with the German language.

Miss Ellington confirmed at the outset, the statement, that she had requested Mr. Drevermann to obtain the appointment of a judicial or official committee, and proceeded as follows:

"I reside at Columbus, Georgia, and came to this place, by way of Berlin, for my health. I am not married; it is my purpose to dispose, by will, of my property, in the following manner:

"§ 1. As my heiress, I hereby nominate my sister, Annie Ellington, residing at present at Berlin.

"§ 2. In case my above named sister should not survive me, I constitute as my heir, my uncle, S. C. Ellington, of Washington, Georgia.

"§ 3. I also hereby bequeath as follows: (*a*) My watch, my pearl necklace and my diamond cross, to Miss Annie Bell Redd, of Columbus. (*b*) My jewelry, called coral set, to Miss Halli Redd, of Columbus. (*c*) My ear-rings, breast-pin and necklace, a set which I call "Blue Jet," (or Bl. Lava) to Miss Louisa Maria Redd, of Columbus. The Misses, Annie Bell, Halli and Maria Louisa Redd, are the

children of my uncle, Mr. Redd, of Columbus. (*d*) A small cameo breast-pin, to Miss Johanna Gescherdt, of Berlin. (*e*) Two hundred dollars, to my servant, Maria Jane Thomas, of Columbus. (*f*) Three hundred dollars, to my friend, Miss Torry, of Columbus. (*g*) A heavy gold ring, to my friend, Johanna Grend, of Columbus. (*h*) My harp and my music, to Mr. George Schasse, of Columbus. (*i*) The two trunks, marked 'Belle Ellington,' to Mrs. S. C. Ellington, of Washton, Georgia. (*k*) The furniture remaining in my room at Columbus, to my aunt, Mrs. Redd, of Columbus. (*l*) My German books, to Mr. Towns, living temporarily at Berlin, but who resides in Columbus, Georgia. (*m*) One hundred dollars, to each one of the *two little sons* of my aunt, Mrs. Redd, of Columbus.

"§ 4. My heir is bound to transmit these legacies to the above named persons.

"§ 5. The diamond ring, found among my chattels, shall be returned by my heir, to the family of James Hunt; my heir is acquainted with the residence of the latter."

These minutes have been read in the hearing of Miss Ellington, approved and signed by her as follows:

"Action as *supra.*　　　V. B. ELLINGTON."

SAUERLAND, *Sworn Secretary.*

SPANKEN,
　*Judge of the Superior Court.*"

And thereupon the propounder introduced and read in evidence to the jury the record and proceedings had in reference to the will of said V. B. Ellington, in that part of Germany called Prussia, the said record purporting to contain the said last will, with the probate of the same in the Courts of said Germany; an exact copy of which said record and proceedings is in the words, letters and figures as follows, to-wit:

Ellington *vs.* Dillard *et al.*

THE FOLLOWING TESTAMENTARY PROCEEDINGS IN THEIR
LITERAL CONTENTS.

*To The Honorable Directors of the District Court of Law at
Paderborn: Request for the deposition of a Last Will.*

Miss Isabella Ellington, fiom Georgia, dwelling here presently for the restoration of her health, at the Sanitary establishment, purposes to enact her last will, and has commissioned me to invite a deposition from the Court of law for such a purpose; the which commission I hasten to fulfill, Miss Ellington being laid up in a very low state of health.

*Lipp Springs*, the 3d September, 1868.

*The Director of the Watering Place,*

(Signed)                          H. DREVERMANN.

D.

With the commission of an immediate deposition, or as it may be, reception of the last will from Miss Isabella Ellington, from Georgia, for the time being at Lipp Springs, and especially in her lodgings, have been charged :

1. The Counsellor of the District Court, Mr. Spanken; and 2, as Recorder of the Minutes, the Assistant to the office, Mr. Sauerland.

*Paderborn*, the 3d September, 1868.

(Signed)                          WEX,

*Privy Counsellor of Justice,*
*Director of the District Court of Law.*

PROCEEDINGS AT LIPPSPRING, IN THE SANITARY ESTAB-
LISHMENT, THE 3D OF SEPTEMBER, 1868.

The last will having been verbally declared to-day, by Miss Isabella Ellington, from the State of Georgia, in America, before the undersigned, deputies from the District Court, in order to be recorded in the minutes of the proceeding, has, in her presence, been provided with a cover, twice

sealed with the official seal of the Law Court, and super-scribed as follows: Herein is contained the testament of Miss Isabella Ellington, from Columbus, in the State of Georgia, which she has to-day, before the undersigned deputies, verbally declared, to be taken on record.

*Lipp Springs,* the 3d September, 1868.
> (Signed)               SAUERLAND,
> > *Sworn Recorder of the Minutes.*

(Signed) SPANKEN,
> *Counsellor of the District Court.*

The Testament has been received in official keeping of the Court of Law.

> *Actum ut supra.*
> (Signed)               SAUERLAND,
> > *Sworn Recorder of the Minutes.*

(Signed) SPANKEN, *Counsellor of Justice.*

> PADERBORN, the 18th September, 1868.

*Ad mandatum* of the 9th of this month, the hereafter described testament.

Herein is contained the Testament of Miss Isabella Ellington, from Columbus, in the State of Georgia, which she has this day, before the undersigned deputies, verbally declared to be taken on record.

> *Lipp Springs.*
> (Signed)               SAUERLAND,
> > *Sworn Recorder of the Minutes.*

(Signed) SPANKEN, *Counsellor of Justice.*

Was taken *ex asserato ad depositum re.*

> A.                ·              T.

(Signed)    CONSBRISCH.    RECKEMEY.    VAHRENKAMP.

> PADERBORN, the 23d October, 1868.

*Ad mandatum* of the 15th of this month the testament hereafter described:

Herein is contained the Testament of Miss Isabella Ellington, from Columbus, in the State of Georgia, which she has this day, before the undersigned deputies, verbally declared to be taken on record.

*Lipp Springs*, the 3d September, 1868.

(Signed)                         SAUERLAND,
                                 *Sworn Recorder of Minutes.*

(Signed)   SPANKEN, *Counsellor of Justice.*

Has been delivered up for publication to the Counsellor of Justice, Spanken.

|     A.     |     V.     |     T.     |
| --- | --- | --- |
| (Signed)   CONSBRUSCH. | REIKEISEG. | VAHRENKAMP. |

PADERBORN, the 23d October, 1868.

This being the (day) legal term appointed for it, the last will of Isabella Ellington, dated 3d September, present year, having been delivered up from the deposit to the undersigned, Magistrate, was presented to the Attorney of the unknown heirs, the Counsellor of Justice, Mr. May. When the latter had recognized the seals as unimpaired, the testament was opened, published by reading it out, and provided with the mark of publication. The signature of the testament was presented to the Counsellor of Justice, Mr. May. The latter moved for a copy of the testament, and undertook to afford the necessary information to the parties concerned

Presentation.                    (Signed)   MAY, and

A.   V.   S.

(Signed)   SPANKEN,
                 *Counsellor of the District Court.*

PROCEEDINGS AT LIPP SPRINGS, IN THE SANITARY ESTAB-
LISHMENT, ON THE 3D OF SEPTEMBER, 1868.

The undersigned, deputies from the Court of law, this day appointed by authority of the directors, had repaired hither,

the same day, for the purpose of enacting the last will of Miss Isabella Ellington, from the State of Georgia, in America, being on a visit here for the restoration of her health, and having to-day announced her intention of making a will. The Superintendent of the Sanitary establishment here, Mr. Drevermann, being personally acquainted with the deputies, conducted them to the room of Miss Ellington, and declared, withal: Miss Ellington is, for nearly ten weeks past, already lodging in the Sanitary establishment here. She had her name set down in the visitor's list, and I have not the least occasion to doubt as to the reality of her being the person she represents to be. Other means of ascertaining the identity of the lady were not at hand. After that, the superintendent, Devermann, has, in approbation of this of the minutes, which was read to him, given his signature to it:

  (Signed)  Superintendent Devermann.

Miss Isabella Ellington was apparently in a weak state of health and confined to her bed; but from the conversation entered upon with her, it resulted that, as far as her mental faculties were concerned, she was quite capable of testamentary dispositions. She is conversant with the German idiom. First of all, she corroborated the fact of having charged the Superintendent of the Sanitary establishment, Mr. Devermann, with the commission of providing the arrival of a deputation from the Court of law, and then she proceeded:

My home is at Columbus, in the State of Georgia, and I have come hither, by Berlin, for the restoration of my health. I am unmarried, and it is my intention now to dispose of my property, by last will. I am, therefore, devising as follows:

§ 1. I am hereby constituting my sister, Henny Ellington, who is presently living at Berlin, my heiress.

§ 2. In case of my sister, above mentioned, not surviving me, I am appointing, as my heir, my uncle, S. C. Ellington, at Washington, in the State of Georgia.

§ 3. I hereby bequeath: (*a*) My watch, my pearl necklace

Ellington *vs.* Dillard *et al.*

and my diamond cross to Annie Bell Redd, in Columbus. (*b*) My piece of jewelry, called coral set, to Halli Redd, in Columbus. (*c*) My ear-rings, my breast-pin and necklace, a piece of jewelry, which I call "blue lava," to Mary Louisa Redd, in Columbus. Annie Bell, Halli and Maria Louisa Redd, are children to my uncle, M. Redd, at Columbus. (*d*) A small breast-pin of cameo, to Johanna Gescherdt, at Berlin. (*e*) Two hundred dollars, to my servant maid, Maria Jane Thomas, at Columbus. (*f*) Three hundred dollars, to my friend, Miss Torry, at Columbus. (*g*) A heavy golden ring, to my friend, Miss Johanna Grend, at Columbus. (*h*) My harp and my music, to Mr. George Chasse, at Columbus. (*i*) The two trunks, marked with the name, "Belle Ellington," to Mrs. S. C. Ellington, at Washington, in Georgia. (*k*) The furniture to be found in the room of my dwelling place, at Columbus, to my aunt, Mrs. Redd, at Columbus. (*l*) My German books, to Mr. Towns, residing presently at Berlin, but whose home is at Columbus, in Georgia. (*m*) One hundred dollars to each of the little sons of my aunt, Mrs. Redd, at Columbus.

§ 4. My heir is bound to deliver up these bequests to the legatees.

§ 5. The diamond ring, to be found in the inheritance left by me, has to be returned by my heir, to the family of Mr. James Hunt; my heir knows the dwelling place of that family.

These minutes having then been read out, approved by Miss Ellington, and signed by her as follows:

(Signed)            V. B. ELLINGTON.

*Actum ut supra.*

(Signed)            SAUERLAND,
*Sworn Recorder of the Minutes.*

(Signed) SPANKEN,
    *Counsellor of the District Court.*

Published in the District Court of Law at Paderborn, the 23d October, 1868.

(Signed)                              SPANKEN,
                    *Counsellor of the District Court.*

[*L. S.*]

Are hereby authentically executed under seal and signature of the Law Court, Paderborn, the 16th of January, 1869, Royal Prussia District Court, Section II.

(Signed)                              WEX.

EXECUTION OF DEED.

I  625
E   53

The undersigned, Court of Appeal, is hereby certifying that in the enactment of the will foregoing here, the formalities prescribed by the laws in the Kingdom of Prussia have been observed in every point, and that, therefore, with regard to form, the will is to be considered as valid and binding in all its (devises) dispositions and clauses.

*Paderborn,* 26th February, 1869.

[*L. S.*]

*Royal Prussia Court of Appeals.*

I. 1407 e   [illegible.]
II. 6151   Produced for the legalization of the signature preceding, Berlin, 22d March, 1869.

The Minister of Foreign Affairs,
In Commission.
The Privy Counsellor of the Legation.

(Signed)                              BULOW.
[Certified at the American Legation.]

The following proceedings legally drawn up, are verbally containing:
Translated at Paderborn, the 23d July, 1869.

Ellington *vs.* Dillard *et al.*

The following witnesses appeared before the undersigned, deputies in Royal District Court here, at the Court day appointed on this date:

1. The Counsellor of the District Court, Mr. Spanken, sixty-five years old, Roman Catholic, appointed Counsellor at the District Court Royal here, and resident here.

2. Mr. Henry Sauerland, forty-four years old, Roman Catholic, appointed at the Royal District Court here as Office Assistant and sworn Recorder of the Minutes, and resident here.

After that, the Counsellor of Justice here, Mr. Lambert May, presented himself.

3. The wife of the Ranger, Louis Schlosser, Gertrude born Eckill, resident at Lipp Springs, near Paderborn, forty-nine years old, Roman Catholic.

After the persons named under 1, 2, and 3, had certified as to bearing no interest, either of relationship or otherwise, to the business concerned, first of all, the Counsellor of the District Court, Mr. William Spanken, declared: In my character of a sworn Magistrate in the District Court here, have I, with the aid of the sworn Recorder of the Minutes, Sauerland, and on the authority in writing from the Royal District Court at Paderborn, set to paper the proceedings dated Lipp Springs, 3d September, 1868, concerning the disposition by last will of Miss Isabella Ellington, from Georgia. I have executed these proceedings with the Recorder of the Minutes, by signing them, and thereby afforded already sworn evidence to the fact that Miss Ellington has made the dispositions by last will contained in these proceedings, has approved and signed them with her name. I now reiterate this evidence, and certify the correctness of it on my oath of office.

Read aloud, approved and signed.

(Signed)                           WILLIAM SPANKEN,
                                *Counsellor of the District Court.*

In the next place, the aforesaid Mr. Henry Sauerland declared :

In my character as sworn Recorder of the Minutes, have I, on the authority in writing from the Royal District Court here, written down here the proceedings dated Lipp Springs, 3d September, 1868, concerning the dispositions by last will of Miss Isabella Ellington, from Georgia, just as the Magistrate in deputation with me, the Counsellor of the District Court, Spanken, has indited them to me, in conformity with the declarations verbally imparted by Miss Ellington. I have, like that Magistrate, executed the aforesaid proceedings by signature of my name, and thereby afforded already sworn evidence to the fact that Miss Ellington has made the dispositions by last will contained in these proceedings, has approved and signed them with her name. I reiterate this evidence and certify its correctness by the oaths of my office.

Read aloud, approved and signed.

(Signed)    HENRY SAUERLAND.

Last of all, Louis Schlosser's wife, Gertrude, born Eickel, declared : During several months the past year, have I, by day and by night, nursed Miss Ellington, from Georgia, who lodged in the room number thirty-seven, of the Sanitary establishment, at Lipp Springs, and thereupon died in the house of the bath-keeper, William Fisher, at Lipp Springs. Within that period, she frequently conversed with me about her death, and how she meant to devise about the property to be left by her. More especially she then mentioned that her uncle, S. C. Ellington, should be her heir, and should get her property. I have also been present at the enactment of her last will in the proceedings with the Counsellor of the District Court, Spanken, and the Recorder of the Minutes, Sauerland, have drawn up on the 3d September, 1868, and heard her repeat those declarations, " that her uncle, aforesaid, should be her heir and get her fortune," before the deputies from the Court of law ; and that the proceeding set to

Ellington *vs.* Dillard *et al.*

paper have been read out to her aloud, and, distinctly, I heard how, thereupon, she approved of these proceedings, and I saw how she signed them, herself, with her name. Upon all of this I may take an oath. Thereupon, the wife, Schlosser, after having previously been cautioned against incurring perjury, has sworn, as witness, to the evidence given by her, according to the formalities prescribed.

Read aloud, approved and signed.

(Signed)            Louis Schlosser's wife, born
GERTRUDE EICKEL.

The Counsellor of Justice, Mr. May, moved for the issue of the original of Miss Ellington's will, and of to-day's proceedings, with the certificates. That the Counsellor of the District Court, Evers, in his capacity as magistrate and deputy of the Royal District Court here, has set to paper the proceedings of to-day, and that, by the Royal Prussian laws, full authenticity is to be attributed to such proceedings.

Read out, approved and signed.

(Signed)            LAMBERT MAY.

A.                    U.                    S.

(Signed)
GUSTAVUS EVERS, *Counsellor of District Court.*
HERMANN HOCHLING,
*Reperendary at the Royal Prussian Court of Appeals.*

Is hereby authentically executed, under the seal and the signature of the Court of appeals.

*Paderborn, 30th July,* 1869.

[*L. S.*]

*The Royal Prussian District Court, Section II.*
(Signed)                                    WEX.

The foregoing signature of the Royal District Court here is, by the present, legalized with this certificate, that is, the enactment of the above proceedings, the formalities prescribed

in the laws of this Kingdom of Prussia, have been observed
n every point, and that in every point full trust is attached
to them.

*Paderborn, 14th August,* 1869.

### [*L. S.*]

*The Royal Prussian Court of Appeal.*
[*Signature illegible.*]            ●

Produced for legalization of the foregoing signature, Ber-
lin, the 31st August, 1869.   The Minister of Foreign Af-
fairs.   In Commission.

The Privy Counsellor of Legations.
[L. S.]            (Signed)            V. KEHLER.

I do hereby certify that I have made *true extracts,* and
translated in the English language the annexed originals.
*Berlin,* October 20th, 1869.
[L. S. J. F. VON BERK.]            J. F. VON BERK,
*Lawful Translator of the Royal Court of Chambers.*

I do hereby certify that the foregoing signature is correct.
By order
[L. S. Minister Seal.]            *The Secret Legation Counsel.*
D. V. TULDET.

Certified at the American Legation, Berlin, November 6,
1869.
[L. S. American Legation.]   ALEXANDER BLISS."

Whereupon propounder closed his case.   Caveators intro-
duced no evidence.   Propounder contended before the Court
and jury that the *writing* propounded, was a good *nuncupa-
tive* will under the testimony, and that under the proofs in
the case, the testatrix, at the time of making said writing,
was domiciled in Germany; that the same was a good will
according to the laws of Germany, and that the same should
be probated as a will, made in a foreign State, in this Court.

The Court decided that, as propounder had alleged by his petition, and had admitted by the agreement, in the testimony read to the jury, by agreement of counsel, that said testatrix was *domiciled* in said Muscogee county at the time of making said will, the propounder should not be allowed to contradict the same by showing that she was, at that time, domiciled in Germany.

The Court charged the jury: That, if the testatrix, in her life-time, made said writing and signed her name to the same, then the said writing was not a good *nuncupative will;* and if the jury so believe, they must find for the caveators.

That propounder, by his petition, alleged that testatrix was domiciled in said county of Muscogee, and by his other count, that she was domiciled in Germany; and further that, by the agreement of counsel in writing, which had been read in evidence, propounder had admitted that testatrix was domiciled in said Muscogee county, and that he could not contradict the same by showing that testatrix was domiciled in Germany. And that said writing, not having been signed by three witnesses, was not good as a written will, and that the jury must find for the caveators.

The jury returned a verdict for the caveators. Said S. C. Ellington says the Court erred in the several rulings, decisions and charges aforesaid.

INGRAM & CRAWFORD.  R. TOOMBS, for plaintiff in error, obtained permission to review, Stamper vs. Hooks, 22 Ga. R., 603.  They contended that the paper was a good nuncupative will by our laws: Code, secs. 2443, 2359; 1 Redf. on Wills, 189 *et seq.;* Dowal Pa., 296, pt. 2, ch. 3, tit. 1, sec. 3069.  That it was written and signed by testatrix makes no difference: Code, sec. 2443; 1st Swinborn, 58 and 59; Mason vs. Durham, 1 Mont., 456; 3 B. Munroe, 162; 6th Mont., 123; 12th Sm. & M., 673; 9 Bar., 59; 1st Hag., 380; 1st Gratton, 129; 2d Sw. & Tri., 375; 1st Eccl., 404; 3d H. & J., 208; 2 Phil., 190; 10th Bacon's Abr.,.

Ellington *vs.* Dillard *et al.*

530; 1st Jarman on W., 136, note 3; 2d Book, Black's 418, note; 1st Munf., 456. As to domicil: See Story's Con. of L., 54, 55, 58; 1st Jarman on Wills, 10, 11; 2 Bos. & Pul., 229; Code, sec. 1689.

SMITH & ALEXANDER. BLANDFORD & THORNTON, for defendants, replied, writing destroyed this paper as a nuncupative will: 1st Swinb., sec. 12; 7 Bacon's Abr., 305; 2 Black. Com., 500, 501; 2 Swifts's System, 420; Irw's Code, secs. 2443, 2379; Stamper vs. Hooks, 22 Ga. R., 603. She did not ask witnesses to bear witness, etc.: Code, sec. 2443. Last illness means *in extremis*: 20th John., 502; 7 Bacon Abr., 305. The *lex loci domicilii* governs: Story's Conf. of L., secs. 467, 468, 474, 475; Stanley vs. Barnes, 3 Hagg. Ecl. R., 373 to 465; 4th Hagg., 346, 354; 1st Birnney, 336; 4 John. Ch. R., 460, 469; 1st Mason, 381; 3d Cranch, 319; 12 Wheat., 169; 9 Peters, 483, 504, 505; 2 P. Will. 291, 293; 14 Ves., 537, 541; 1 Fonbl. Eq. P., 444, 445, note; 7th Cr., 115; 4 John. Ch. R., 460; 20 John., 229; 10 Wheat., 192, 202.

WARNER, J.

A paper writing was propounded in the Court below, to be admitted to probate as a *nuncupative* will, upon the following agreed statement of facts, to-wit: "That the testatrix was a native of the State of Georgia, where she resided until she was of age; that in the year 1866, she went to Berlin, in Germany, for the purpose of completing her education, with the intention of returning to Georgia when her education should be completed, and remained in Berlin eighteen months; that, being in bad health, she went to Lipp Springs, in Germany, and on the 3d day of September, 1868, she was informed by her physician that she had the consumption, and could not live long; was then confined to her room and bed, and on the 3d day of October, 1868, she died, having never recovered from said sickness; that on the 3d day of Septem-

Ellington *vs.* Dillard *et al.*

ber, 1868, she invited to her room one Spanken, and one Sauerland, and one Gertrude Schlosser, who was her female attendant and nurse, and who was present, in the same room, during the entire transaction, and then and there, in the hearing and presence of the said three witnesses, she expressed her purpose to make her will, and then and there she dictated the several items in said paper, purporting to be her will, and the same were then and there reduced to writing by the said Spanken and Sauerland, who signed the said paper as official witnesses, and the said testatrix then and there signed her name to the same. All of which testamentary dispositions appear upon the said paper writing; that the said paper writing speaks the truth, with the recitals therein, in reference to the facts therein recited; that said paper writing was executed, in substance and form, according to the laws of force in that part of Germany where the same was executed, and, by the laws of that country, would be a good testamentary disposition of real and personal property, located in that country; that said will has been proven and admitted to record, according to the laws of that country; that the property conveyed by said will, except the specific bequests in said paper mentioned, consists of lands and railroad stocks, located in the State of Georgia." On the trial of the case in the Could below, the Court charged the jury, "that if they believed, from the testimony in the case, the testatrix, in her life-time, made said paper writing and signed her name to the same, then the said paper writing was not a good *nuncupative* will, and if the jury so believe, they must find for the caveators;" to which charge the propounder of the will excepted. A *nuncupative* will, as defined by the law, is one which depends merely upon *oral evidence*, being declared by the testatrix *in extremis*, before at least three competent witnesses, and afterwards reduced to writing, within thirty days, under the provisions of our Code, after the speaking of the same. The paper propounded, if it had been attested and subscribed in the presence of the testatrix, by three witnesses,

would have been a good *written will*, under the law of this
State.   The fact that it was attested and subscribed by only
two witnesses does not make it, in the sense of the law, a
*nuncupative* will, although made during the last sickness of
the testatrix, *thirty days before her death;* the more especially
as it does not appear from the evidence in the record that, at
the time the paper writing was signed by the testatrix, she
was *in extremis,* or that the legal execution of the written
paper was prevented by any sudden surprise or providential
cause.   If, after the will had been written, as dictated by the
testatrix, and signed by her, and before the requisite number
of witnesses could have subscribed the same, she had sud-
denly died, then the paper might have been propounded as a
*nuncupative* will, notwithstanding she had signed the paper;
for its legal execution would have been prevented by the act
of God.

But, inasmuch as the facts stated in the record, and ad-
mitted to be true (and there being no conflicting evidence)
do not, in my judgment, shew that the testatrix, at the time
she signed the paper propounded, was in the sense of the
law, *in extremis,* so as to authorize the same to be established
as her *nuncupative* will under the law applicable to that class
of wills, I am of the opinion that the judgment of the Court
below should be affirmed, notwithstanding the Court charged
the jury that if the testatrix in her lifetime made said writ-
ing and *signed her name* to the same, it was not a good nun-
,cupative will; the verdict is right under the law applicable
to the facts stated in the record; that is to say, the statement
of facts admitted to be true, (there being no conflicting evi-
dence) are not sufficient in law, to authorize the paper writing
propounded to be established as the *nuncupative* will of the
testatrix, although the charge of the Court on the point of
*signing* the will may have been too restrictive, if the admit-
ted facts would have authorized the jury to have found a dif-
ferent verdict, had the charge of the Court been otherwise
upon that point in the case.

Let the judgment of the Court below be affirmed.

LOCHRANE, C. J., concurring.

The question in this case is, whether the will made by Miss Ellington, in Prussia, can be set up as a nuncupative will, under the laws of Georgia. The Court below held, "that the paper propounded having been written in the life time of the testatrix, and signed by her, was not a good nuncupative will." The will was declared verbally by Miss Ellington, while in a low condition of health, dying of consumption at Lipp Springs, Germany, in the presence of officials, who took down her declarations as they were made ; and after they were thus written down, they were read over to her, approved by her, and she signed them, and they were witnessed by the two officials. It is admitted that one other witness was present during this time, who is brought in as a witness in the proceedings in this case. It will be noticed that these verbal declarations were reduced to writing in her presence, and signed by her.

The propounder lays down three general propositions upon which he relies:  1st. That this will was the verbal declarations of Miss Ellington touching the disposition of her estate after her death, which they say was accompanied by all the circumstances required to set up a nuncupative will under our laws.  2d. That the reducing these verbal declarations to writing did not alter their effect or character.  3d. That her signing them after they had been reduced to writing did not change their effect or character.

To strip this case of all unnecessary theories, and take its plain meaning, we find that the testatrix did not intend any *verbal* or *nuncupative* will. She had time, opportunity and means to make such a will as she intended; and she made it. She was not *in extremis*, or in haste, and lived thirty days after this will was executed by her. The only difficulty was that she made a will before two witnesses, under the law of Prussia, instead of three, under the law of Georgia. If she had required the nurse to have signed at the time she signed

and the others signed, she would have had a valid written will. But she did not, and hence arises the difficulty of the case.

If we take this will, as made by Miss Ellington, with her signature thereto, how can we arrive at the conclusion that she made a nuncupative will? Here is a will made by the testatrix thirty days before her death, written as she dictated it, signed by herself and two witnesses. Laying, for the present, every other question one side, can we hold this to be an unwritten will, under the laws of this State? It bears no mark of such an instrument; neither in its inception nor in its consummation, does it present the familiar *indicia* of a nuncupative will.

And, after all the consideration we are able to give the question, we have not seen any law controlling us to reverse the judgment of this Court, in *Stamper vs. Hooks*, 22 Georgia Reports, 604. That decision was the opinion of the Court with Judge LUMPKIN, one of the greatest men that ever ornamented this Bench, with McDONALD, a man of powerful and overtowering intellect, with BENNING, a man of large reputation and ripe experience in the profession. These men have declared, as the solemn judgment of the Court, that the signing of the paper which the party intends to be his will, prevents its being a nuncupative will.

In Bacon's Abridgement, nuncupative wills are defined, " by word or without writing." We find it laid down in Redfield, 188–9 : " In many instances, it has been held that instructions for the drawing up of a written will, declared before the requisite number of witnesses, may be received and proved, etc., as a nuncupative will, where the testator is, by the act of God, rendered incapable of completing his will, in the mode contemplated by him. But this has been denied, in some cases; and, as it seems to us, with the greater show of reason and authority, since the very definition of a nuncupative will, *in all recent times*, is that it be made by the testator when he is *in extremis*, and so conscious of the

Ellington *vs.* Dillard *et al.*

fact that he apprehends he has not time to make a will in writing, etc."

But when the will is in writing, and signed and witnessed, it cannot be set up as an unwritten or nuncupative will. Our Code, section 2443, provides for reducing *the words spoken* to writing. The will is not a written, but a nuncupative, testamentary disposition of property. It is urged that this was a verbal declaration. So are mostly all wills not in the handwriting of the testator. This fact cannot change the law. If A, lying on his bed, verbally dictates his will to B, who writes it down and then reads it over to A, and he signs it, in the presence of three witnesses, this is a written will. If all this transpires in the presence of, and is attested by two witnesses, this failure of the proper attestation does not make it nuncupative, and this is this case.

Again, in this case, the testatrix used no words at the time that bear the intention of her making a nuncupative will. The record shows that she desired the appointment of a judicial or official committee, not as witnesses to her nuncupation, but to execute her will, in consonance with the laws of Prussia. The record nowhere treats it as nuncupative, but as her last will. The language is her purpose to *enact*, which, not only in its ordinary sense, but as demonstrated by the proceedings, means *the whole solemn ceremonial of a record*, more than writing. Such is the conclusion of this will. After reading to her, she approved and signed, and the proceedings say, " The last will having been verbally declared to-day by Miss Isabella Ellington, from the State of Georgia, in America, before the undersigned Deputies from the District Court, *in order to be recorded* in the minutes of the proceedings," etc.

Then, we say, from the record, that the will and its execution both bear intrinsic evidence of the manner and intention of the act, and negatives all presumption of nuncupation or declaration intended to be left to witnesses, after her death, to set-up or establish. Again, we say that, under the weight

of authority, from the evidence, she was not *in extremis*; that is to say, she was not in such condition, from the agreed statement of facts, as is contemplated by law for the making of nuncupative wills.

Our Code does not define the last sickness, but leaves us to go back to the common law and ascertain the meaning attached to the words by the judicial exposition of Courts. From the time of Henry VIII., the law had become established in England that such wills, to be of any avail, must be made in the last extremity, when the testator did not expect to recover and had not time to make a more deliberate will, or a will in writing. The English statute, 29 Car., II., is like our own. The law of nuncupative wills, as to last sickness, etc., in this country, has received the same construction. In Priscilla E. Jarnall's will, 4 Rawle, it was held, the testator must be *in extremis* and have no time to make a written will; and one made by a consumptive patient, nine days before her death, was held not valid.

A nuncupative will is not good unless made when the testator is *in extremis*, or overtaken by a sudden and violent sickness, and has not time to make a written will, is the construction of "last sickness," under statutes of New York, 20 John's, 502. A nuncupative will is only good when made in such extremity of the last sickness as precludes a written one: Bayce vs. Frick, 4 Watts and Serg., 357. A nuncupative will, to be valid, must be made by a person *in extremis,* who has not power, ability or time to make a written one: 10 Gratt., Va., 548. The same doctrine is held in Haus vs. Palmer, 21 Prim., 296; see 4 Bradf. N. Y., 154, *ex re* Thompson; also in Lucas vs. Gaff, 33 Miss., 629. And the doctrine we educe from the authorities is to the effect, "that, where the testator did not intend to make a nuncupative will, and there was time to make a written one, it cannot be set-up as a nuncupative will, if such writing was signed by the testator, though not formally witnessed.

The class of cases like that in 1st Gratt., 129, are not ap-

plicable to the case at bar.   In that case, where there was not time to complete the written will, it was set-up as nuncupative; but the act of completion must not have been dependent on mistake of the law, or other voluntary act of the testator. But in cases where extreme illness and the act of God prevents the fulfillment of the testator's design, such as swooning and other extreme necessity.   If it is the result of choice, t cannot be so regarded in the light of the law.

It may be properly stated, as a general rule, that the questions arising, under the Code, as to *rogatio testium*, last sickness and circumstances, are matters of fact for the jury to find, under the law, as given them in charge by the Court. And we unhesitatingly affirm this rule, under our law, to be valid.   But when the evidence agreed on could not change the verdict, legally—that is to say, when, under the facts and the law, the jury could not change the conclusion, we do not deem it necessary, on this account, to send the case back for adjudication.

And for these reasons, I concur in affirming the judgment of the Court below.

McCAY, J., dissented, but wrote out no opinion.   His dissent, delivered from the bench, was as follows:

Where, at the request of a citizen and resident of Georgia, a young lady, who was temporarily in Prussia, a commission of its officials was appointed by a Court of that country to take the "immediate deposition, or as it may be, reception of her last will," one of which commission was designated as "the Counsellor" or "Judge" of said Court, and the other as "sworn Recorder of the minutes," and said commission convened at her lodgings, examined her landlord as to her identity and the time of her stay with him, were then admitted to her room, where they examined into the state of her health, her mental condition, her residence, her condition in life, and received from her a confirmation of her having requested their appointment, and thereupon, she dictated to

them, by word of mouth, her testamentary dispositions in detail, one other witness being present besides the said commission, and the whole of said proceedings were reduced to writing, headed, "Proceedings held at the Lipp Springs Watering Place Hotel, September 3, 1868," and were signed, officially, by said "Recorder," and by said "Counsellor" or "Judge" of said Court, and also by the testatrix, who was at the time confined to her bed, in a low condition, and had been informed by her physician that she did not have long to live, and who died, within a month of said sickness, and said minutes were transmitted to said Court as a record thereof of the *verbal dispositions* of the testatrix:

*Held, first,* That on a trial before a jury of an issue formed upon the propounding of said will, as a nuncupative will, it was error in the Court to charge the jury that, if the testatrix signed the writing proposed to be set up, it could not be set up as a nuncupative will.

2. That whether the said will was made in the last sickness of the deceased, and whether the other requisites of the statute regulating nuncupative wills had been complied with, were questions of fact for the jury, and the Court having, by its charge withdrawn these facts from the jury, a new trial ought to be granted.