ROWENA WEIR

v.

ELIZA C. CHIDESTER et al.

1. NUNCUPATIVE WILLS—*construction of the statute in regard to what constitutes a compliance therewith.* A literal compliance with the statute in regard to nuncupative wills, will not be required in every instance; but the law, in no case, will dispense with a substantial compliance in order to the validity of such wills.

2. It is not necessary that the testator should have used the exact words of the statute, but any words that express a clear intention to give the estate to a certain person, will be sufficient to pass the property.

3. Nor is it necessary that the testator should call upon persons present, by name, to become witnesses to his will. Any form of expression, however imperfectly uttered, so that it conveys to the minds of those to whom it is addressed the idea that he desires them or some of them to bear witness to the disposition he is making of his property, will be deemed a compliance with the statute in that regard.

APPEAL from the Circuit Court of Clay county; the Hon. R. S. CANBY, Judge, presiding.

Messrs. HAGLE, CHESLEY, SMITH, ROTAN and BREWER, for the appellant.

Messrs. COPE & BOYLES, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this cause was exhibited by the heirs at law of Corydon Kinnaman, deceased, in the circuit court of Clay county, and the relief sought was to have the nuncupative will of the said Kinnaman set aside and declared null and void. The will was declared on the 10th day of August, 1869, and within twenty days from that date it was regularly reduced to writing and was admitted to probate in the county court of the county where the testator had resided.

The ninth section of the statute of wills (R. S. 1845) provides that "a nuncupative will shall be good and available in law for the conveyance of personal property thereby bequeathed, if committed to writing within twenty days, and proven before the court of probate by two or more credible, disinterested witnesses who were present at the speaking and. publishing thereof, who shall declare on oath or affirmation that they were present and heard the testator pronounce the said words, and that they believed him to be of sound mind and memory, and that he or she did, at the same time, desire the persons present, or some of them, to bear witness that such was his or her will, or words to that effect."

The record of the probate court shows a substantial compliance with this provision of the statute. Two witnesses who were present, state on oath that they heard the testator publish his will and pronounce the words making a disposition of his estate ; that he named the devisee ; that he was then of sound mind and memory ; that he desired the persons present to bear witness that such was his intention and desire, and that soon after the speaking of the words the testator died.

It is now sought to impeach the will after the lapse of more than two years from the time the same was admitted to probate, on the ground that the testator never called on any persons to bear witness to his will, and that he used the words merely as an expression of a desire, and not with the intention of bequeathing his property.

The witnesses, whose testimony is mainly relied on to impeach the will, are the same by whom it was established in the county court, and are brothers of the testator.

It is objected that these witnesses, being parties to the record and interested in the subject matter in litigation, are incompetent to testify on their own behalf and that of the other appellees. If called against their interest, no such question could arise. In the view that we have taken of this

case, it becomes unnecessary to determine whether their evidence, when taken on the bearing of this cause, was competent or not, for the reason that if their evidence should be regarded as admissible, and be considered in connection with the other evidence preserved in the record, it is not sufficient to entitle the appellees to any relief.

A literal compliance with the statute in regard to nuncupative wills, will not be required in every instance; but the law, in no case, will dispense with a substantial compliance in order to the validity of such wills.

It is hardly to be expected that persons *in extremis* will use the exact words of the statute. No set form of words is necessary. Any words that express a clear intention to give the estate to a certain person, will be sufficient to pass the property. Nor is it necessary that the testator should call upon persons present, by name, to become witnesses to his will. Any form of expression, however imperfectly uttered, so that it conveys to the minds of those to whom it is addressed the idea that he desires them or some of them to bear witness to the disposition he is making of his property, will be deemed a compliance with the statute in that regard. *Arnett et al.* v. *Arnett*, 27 Ill. 247.

The evidence leaves no doubt on the mind that the testator intended to, and did, do all he could under the circumstances to bestow his property on the appellant. The friendly relations that had existed between them for a considerable length of time anterior, affords a reason for his desire so to do. All the witnesses concur in saying that the testator expressed a desire that Mrs. Weir, to whom he seems to have been very strongly attached, should have all his property. But it was more than a desire, for he called on some persons attending him to see that she got it, and directed where a small amount of money could be found. Had the testator used the technical words found in written wills, "devise," "bequeath," etc., he could not have expressed a stronger intention to bestow his property on the appellant than he did by

the simple words used in the last moments of his life. It would be an unreasonable interpretation of the statute to hold that a party in the agony of death should be required to use the exact language of the law books before he could make a disposition of his property under this law. Such a construction would render the statute inoperative.

Both witnesses, William and Martin Kinnaman, who were called by the appellees to impeach the will, did state, under oath, in the county court, when the will was admitted to probate, in substance, that the testator desired them, among others, to bear witness to his intention to give his property to the appellant. Their testimony, when taken on the hearing of this cause, does not differ materially from their statements made in the county court. On their examination in this cause, they say that the testator wanted the persons present to understand that it was his intention to give his property to the appellant. It is true, that they do now say that he did not call upon any one to become a witness to his will. It was not necessary that he should do so in express terms.

The witness Lewis states that the testator called on him to see that the appellant got the property. On being interrogated as to his meaning, the testator again replied that he wanted Mrs. Weir, the appellant, to have all his property. Although the testator did not call on the persons about him directly by name to become witnesses to the will that he was then making, yet the evidence does disclose that he used equivalent words, which, in their ordinary meaning, do signify that he desired them to bear witness to the disposition that he was making of his property; and under any reasonable construction that can be given to the statute, this must be held to be sufficient to establish the will.

In our opinion, the will was rightfully admitted to probate, and that the evidence in this record, if we should consider it all as competent, shows no sufficient grounds for setting it aside.

For the reasons given, the decree of the circuit court is reversed and the bill dismissed. .  *Decree reversed.*