200    549
e 25 SC¹ ¹246

## Rutt's Estate.

*Will—Nuncupative will—Evidence—Act of April* 8, 1833, *sec.* 7, *P. L.*
249.

In order to constitute a nuncupative will, each requisite of the statute
must be strictly proved, and it must be shown that there was not only the
animus testandi, but also the mind and intent to nuncupate.

Where a person at a time when he is in possession of his faculties and
does not anticipate immediate death makes certain statements as to the
division of his property, which statements are rather drawn from him by
others than are voluntary expressions and declarations of his own, and he
does not call on the persons present to bear witness that the statements are
intended as his will, such statements cannot be construed as a nuncupative
will.

Argued May 21, 1901. Appeal, No. 271, Jan. T., 1901, by
Eli W. Martin and Henry M. Shreiner, from decree of O. C.
Lancaster Co., dismissing appeal from Register of Wills in the
Estate of Joshua Rutt, deceased. Before McCOLLUM, C. J.,
MITCHELL, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from register of wills.

LANDIS, J., filed the following opinion:

By the Act of April 8, 1833, P. L. 249, section 7, it is pro-

vided that personal estate may be bequeathed by a nuncupative will under the following restrictions:

" 1. Such will shall, in all cases, be made during the last sickness of the testator and in the house of his habitation or dwelling, or where he has resided for a space of ten days or more next before the making of such will; except where such person shall be surprised by sickness, being from his own home, and shall die before returning thereto.

" 2. Where the sum or value bequeathed shall exceed one hundred dollars, it shall be proved that the testator, at the time of pronouncing the bequest, did bid the persons present, or some of them, to bear witness that such was his will, or to that effect, and, in all cases, the foregoing requisites shall be proved by two or more witnesses who were present at the making of such will."

Section 8 provides that, "notwithstanding this act, any mariner, being at sea, or any soldier being in actual military service, may dispose of his movables, wages and personal estate as he might have done before the making of this act."

Nuncupative wills, though tolerated, are, by no means, favorites of the law. Nuncupation is not a matter of right, but of special indulgence, as a last resort. It is an exception to the rule of the statute, which has no foundation but necessity, and which, as it affords great temptation to the perjury and fraud which it was the aim of the leading provisions to prevent, cannot be resorted to as a measure of mere convenience. To entitle them to probate, the provisions of the law must be strictly complied with, and the absence of due proof of a strict compliance with any one of them is fatal. The testamentary capacity of the deceased and the animus testandi, at the time of the making of the will, must be proved by the clearest and most indisputable testimony, and it must plainly appear from the evidence that the instrument proposed to be proved contains, at least, the true substance and import of the declarations made by the deceased. The rogatio testium must be at the time the alleged nuncupative will is made, which must be proved by two or more witnesses who were then present, and it is not enough if the alleged testator declares his will, first, in the presence of one witness, and afterwards, in the presence of another. The requisite number must be present and called on at the time to attest the

will, and such a will is not good unless it be made by the testator when he is in extremis, or overtaken by sudden and violent illness and has not time or opportunity to make a written will: Yarnall's App., 4 Rawle, 46; Boyer v. Frick, 4 W. & S. 357; Prince v. Hazleton, 20 Johnson, 523.

The act of assembly requires that all wills shall be in writing, signed by the testator, and permits a verbal or nuncupative will only in extreme cases, where the party, by the effect of disease, is incapaciated from making a will. To sanction a verbal will where there is time to make a written one, would tend to the introduction of all the doubt, uncertainty, litigation, fraud and imposition which uniform experience has shown attend the allowance of verbal wills in ordinary cases. Therefore, where a decedent was able to come down stairs to receive and converse with visitors, and to walk in the street, and died the next day from a rupture of the lungs, it was held not to be such extremity or last sickness as authorized a nuncupative will under the act: Werkheiser v. Werkheiser, 6 W. & S. 184. There ought, therefore, to be present, in order to constitute a nuncupative will, not only the animus testandi, but the mind and intent to nuncupate; and, in Porter's Appeal, 10 Pa. 254, it was held that, where A in his last sickness, called B to him and declared his wishes as to the disposition of his estate, and directed B to write it down as his will, and called upon two persons to witness that that was his will, and B made a memorandum in pencil of A's intention, and A died in an hour afterwards, but continued sensible to the last, there was no proof of a nuncupative will.

The general rule requiring all wills to be in writing is intended to be as nearly universal as possible. The exception in favor of nuncupative wills must be strictly administered and confined to cases of necessity. Ignorance of the general rule, or carelessness about attending to it when the testator is conscious that his sickness is unto death, or mere aversion to be troubled about it, does not constitute such necessity. The substance of the will, the intent to will, the call upon two or more disinterested persons to bear witness to it as a will, and the necessity of resorting to and depending upon a verbal will, must, each and all, appear with great clearness, in order to amount to proof: Haus v. Palmer, 21 Pa. 296. See also Tay-

lor's Appeal, 47 Pa. 31, Conaughton's Estate, 30 W. N. C. 202, and Meisenhelter's Will, 38 Legal Int. 294.

But this question has been again lately reviewed by the Supreme Court in Wiley's Estate, 187 Pa. 82, in which some of the above authorities are carefully commented upon. It was there held that, in order to constitute a nuncupative will, each requisite of the statute must be strictly proved, and it must be shown that there was not only the animus testandi, but also the mind and intent to nuncupate. The testamentary words of the decedent, as committed to writing and offered for probate, were: "Everything is to go to Willie; everything is Willie's; I want everything to go to Willie." Two of the three witnesses to whom the words were addressed testified to them at the hearing in substantially the same form. The third witness stated them with an addition as follows: "Mary, don't you or the children worry about anything; I want Willie, brother Willie," she said, "to have everything; it has been put off; I intended to fix it so that there would be no trouble, but it has been put off." The witness further said: "She realized that she wasn't able to do anything." Other witnesses testified that, on several previous occasions, the decedent had used similar words as to her intention as soon as she was able to "fix everything for Brother Willie." There was no evidence that the decedent made any explicit call on persons present to bear witness that the declarations which she made were intended as her will. The nurse testified that the decedent requested the presence of her family; but the purpose of the request was not stated. It was held that the evidence was not sufficient to establish a nuncupative will. MITCHELL, J., in delivering the opinion of the court, said: "But there is another aspect in which the appellant's case even more manifestly fails. There must not only be the testator's intent to make a will then and there, but an explicit call upon persons present to bear witness that such was the intended effect of the testator's declaration. The words of the statute are, that "it shall be proved that the testator, at the time of pronouncing the bequest, did bid the persons present, or some of them, to bear witness that such was his will, or to that effect." The phrase "or to that effect" was intended to prevent the inference that any set form of words should be necessary, but not to diminish the requirements of a

distinct and explicit request by the testator to persons present to remember and be ready to testify that the testator was thereby making his will. . . . There is an entire absence of affirmative evidence that the decedent in this case bade the persons who testified to bear witness that what she was saying was a will, or that she used any expression which, even by liberal construction, can be treated as a request 'to that effect.' She did require the presence of the family; but even that is only proved by one witness, the nurse, and the purpose was not stated. It may be inferred, but the inference is not certain, and, even if it were, it is not enough; there must be clear proof."

It is, therefore, necessary to refer to the testimony in this case to ascertain the exact facts so that we may intelligently apply to them the above rules of law. It was shown that Joshua Rutt, an old gentleman, aged eighty-eight years, and residing at his own home in East Lampeter township, died on March 7, 1900. The maiden name of his wife, who had been dead some years, was Leah Martin. There were no lineal descendants surviving him. He left, however, collateral relations, consisting of the children of brothers and sisters, and his wife also left numerous nephews and nieces on her side. After his decease, letters of administration on his estate were granted to Jacob R. Witmer, Jacob R. Buckwalter, David H. Martin, David M. Rutt and Abram F. Rutt. Proof was subsequently produced before the register of a nuncupative will, and application was made before him for the revocation of the abovementioned letters, the admission of the nuncupative will to probate, and for the granting of letters testamentary thereon. This application was duly heard by the register and refused, and an appeal from that decision is now before this court.

The alleged nuncupative will was reduced to writing on April 17, 1900, and was signed by Jacob R. Witmer, Jacob R. Buckwalter and David R. Witmer. It was alleged to have been made on the afternoon of March 7, 1900, about three o'clock, Joshua Rutt being then in the extremity of his last illness, at his dwelling house in East Lampeter township, where he had resided for more than thirty years. The three above named persons were his nephews, being children of deceased sisters. It was alleged that they all met at Rutt's house

on this afternoon, between one and two o'clock, and the following conversation in German took place:

"'Sind ihr oll os in der stube sind?' and being answered by Jacob R. Witmer 'Yaw,' he continued: 'Ich hab eppes tsu sawga—ich hab kein willa gemacht—ich hab eppes tsu sawga, awer ich kon shear gaurly net.' Then Jacob R. Witmer said: 'Du hetsht gern a pawr mon for dein estate uf tsu settla—do bin ich, Jacob R. Witmer, Jacob R. Buckwalter und der Amos Witmer—sulla mirs due?' Then he, Joshua Rutt, said: 'Yaw; und der Dave Martin.' Then he said: 'Es sull olles gleich ferdaelt si unnich de Rutts und de Martins; so dos die Martins nix tsu sawga hen.' Then David R. Witmer asked: 'Is es dein willa dos die nephews und nieces uf de tswa seide gleich hawa sella?' Then Joshua answered. 'Yaw; des is mein willa, der'no hut niemond nix tsu sawga.'"

Which, as translated in the nuncupative will, is:

"'Are you all that are in the room?' And being answered by Jocob R. Witmer, 'Yes,' he continued: 'I have something to say; I have not made a will; I have something to say; but I am scarcely able to talk.' Then Jacob R. Witmer said: 'You would like to have a few men to settle up your estate? Here am I, Jacob R. Witmer, Jacob R. Buckwalter, and Amos Witmer. Shall we do it? Then he, Joshua Rutt, said: 'Yes, and David Martin.' Then he said: 'All shall be divided equally between the Rutts and the Martins, so that the Martins will have nothing to say.' Then David R. Witmer asked: 'Is it your will that the nephews and nieces on both sides shall have alike?' Then Joshua Rutt answered: 'Yes, that is my will. Then no one has anything to say.'"

The depositions of the said Jacob R. Witmer, David R. Witmer and Jacob R. Buckwalter were then taken for use before the register. Their testimony differs somewhat from the words of the nuncupative will, although it must be conceded that the variance is slight, and, in effect, they are practically the same. The testimony of Jacob R. Witmer, as translated and as I have gathered it, is: "Rutt said: 'Are you four all there in the room?' Then I said: 'Yes.' Then Rutt said: 'I have made no will; but speaking goes so hard with me, I can hardly talk.' Then Witmer said: 'Shall I speak a few words for you? You want a few men appointed to settle the estate?' He said:

'Yes.'  'Here am I, Jacob R. Witmer, Jacob R. Buckwalter, and Amos Witmer, shall we do it?  Rutt said: 'Yes, and Dave Martin also, and they shall all have alike, and the Rutt side and the Martin side; then the Martins can have nothing to say.' Then Dave Witmer asked him: 'Is this your will, that the Rutt side and the Martin side shall inherit alike, nieces and nephews?' Rutt said: 'Yes, that is my will; then no one will have anything to say.' "   Jacob R. Buckwalter testified that this was the conversation: " Rutt said: ' Are you four alone here in the room?  I have something to say, but talking goes hard with me.  I have made no will.'  Then Jacob Witmer asked him: 'Can I help you?'  Rutt said: 'Yes.'  Jacob Witmer asked him: 'Is it about your estate?'  Rutt said: 'Yes.'  Then Jacob Witmer said: ' You wish a few men to settle the estate?'  Rutt said: 'Yes.'  Jacob Witmer said: 'Here am I, Amos K. Witmer and Jacob R. Buckwalter; shall we do it?'  Then Rutt said: 'And Dave Martin.'  Then David R. Witmer asked him: 'Is it your wish that the nieces and nephews shall share alike?'  Rutt said: ' Yes, the nieces and nephews on both sides shall share alike·'"   On cross-examination, both Jacob R. Witmer and David R. Witmer stated that some ten or fifteen minutes after the above conversation took place, Jacob R. Witmer stated, in effect, to Joshua Rutt that what had transpired was not in the form of a regular will, and asked if he should get a 'Squire, who would draw the will properly, to which Mr. Rutt responded: " Heit net," which means " not to-day."

Mr. Rutt had been sick for nine days.  He had tramped on a nail, and it finally developed into a mild form of tetanus. The doctor, however, said that he seemed to die more from exhaustion than from the tetanus itself.  He was sitting up in his chair when the above conversation took place, and the witnesses say that he was possessed of all his faculties.  The only expression, as testified to, that would indicate, in any way, that he thought his dissolution might be approaching appears from the testimony of David R. Witmer, in which, in answer to a question: " Did he say anything that he thought his death was near; did he speak anything about it to indicate that he apprehended the approach of death?" he answered: " In regard to that, he talked about the minister for the funeral services; I don't know what that was; he mentioned the minister of our church."

It seems very clear to us that this is no such a case which calls for a revocation of the decision of the register of wills. Taking the whole evidence there is nothing to show that Joshua Rutt ever knew there was such a thing as a nuncupative will, or that his intentions were to make such a will. But, even conceding that he did, there is no evidence that he made any explicit call on the persons present to bear witness that the declarations he made were intended as his will. It appears that what was said by him, in its material parts, concerning the division of his property between the Rutts and the Martins, was drawn from him by Jacob R. Witmer and David R. Witmer, and were not voluntary expressions and declarations made by him in the extremity of his illness, with a desire to dispose of his property.· It is just such a case as this that the law has attempted to guard against. The decedent was not attacked by sudden and fatal illness ; but, for nine days, had been suffering from the effects of his injury, all of which time he was in perfect mind and competent to dispose of his estate. In addition, the very fact that, when it was suggested to him that a written will would be proper—and the fact that such a suggestion was made indicates that none of the parties present conceived that he was in extremity, he answered, "Not to-day," clearly indicating that he, at least, had no fear that his life was near its close, or, at least, that he did not intend, at that time, to make a will. It makes no difference that he actually died within three or four hours of that time, for it is not the sudden demise that makes all expressions immediately preceding it liable to be construed as a nuncupative will, but only those as shall be made by him when overtaken by sudden and violent illness and he has not time nor opportunity to make a written will, and made with a full understanding as and for a will, and proclaimed in accordance with the statute before witnesses as such.

Appeal dismissed.

*Error assigned* was the order of the court.

*John W. Appel*, of *Appel & Appel*, and *D. McMullen*, with them *Amos E. Burkholder*, for appellants, cited: Yarnall's App., 4 Rawle, 46 ; Royer v. Frick, 4 W. & S. 360 ; Stricker v.

Graves, 5 Wh. 386; Werkheiser v. Werkheiser, 6 W. & S. 184.

*A. G. Dickson* and *B. Frank Eshleman*, with them *B. F. Kready, B. F. Davis, W. U. Hensel* and *N. Franklin Hall*, for appellees.

PER CURIAM, October 11, 1901:

The evidence submitted in this case was not sufficient to establish the existence of the alleged nuncupative will of the deceased. This plainly appears in the elaborate and satisfactory opinion of the learned judge of the court below. The decision of the register of wills refusing to revoke letters of administration on the estate of the decedent and denying admission to probate of the alleged nuncupative will is therefore sustained and the appeal is dismissed.