## ALEXANDER P. BAIRD v. JAMES BAIRD.
### No. 13,870.   (79 Pac. 163.)

#### SYLLABUS BY THE COURT.

1. "VERBAL WILL"—*Statute Construed.* The statute of Kansas provides that a verbal will may be made in the last sickness of the testator. (Gen. Stat. 1901, § 8007.) By this term it is not meant that he must be *in extremis* or *in articulo mortis;* nor is it necessary that he be prevented from making a written will by surprise of sudden death.

2. ———— *Expectancy and Liability of Death from the Fatal Disease.* The requirement that a verbal will, to be valid, must be made in the last sickness is satisfied if the fatal disease has progressed to such a point that the testator expects, and is liable, to die therefrom at any time, and, in view of such expected death, and as preparatory thereto, such will is made, and if death ensues from such illness.

3. ———— *Prior Preparations and Subsequent Opportunity Immaterial.* A verbal will made under such circumstances is not rendered invalid by the fact that there had been prior preparation to make it, nor by the further fact that there were sufficient time and opportunity thereafter to make a written one.

4. ———— *Testator's Words to Witness Held Sufficient.* The requirement of the statute, that one making a verbal will shall have "called upon some person present at the time the testamentary words were spoken to bear testimony to said deposition as his will," is satisfied where the testator at the time said to those standing near: "I want you to see that it is carried out the way I want it to be."

Error from Lyon district court; DENNIS MADDEN, judge. Opinion filed January 7, 1905. Reversed.

*Graves & Hamer, Buck & Spencer,* and *W. T. McCarty,* for plaintiff in error.

*J. G. Hutchison, Kellogg & Madden,* and *H. Clay Horner,* for defendant in error.

Baird v. Baird.

The opinion of the court was delivered by

CUNNINGHAM, J. : This was an action in the district court of Lyon county to contest the verbal will of J. Hardin Baird, which had been admitted to probate in that county.   The issues were tried by the judge, who announced his findings of fact and conclusions of law as follow :

## "FINDINGS OF FACT.

"1.  That prior to March 1, 1903, J. Hardin Baird, a resident of Lyon county, Kansas, and an unmarried man, became sick of nervous prostration at his home in Emporia, Lyon county, Kansas, and was afterward taken to the residence of T. L. McDill, in said Emporia, Lyon county, Kansas, which sickness continued through intermittent stages of better and worse until his death at the place last mentioned on the 16th day of April, 1903.    That deceased expected the approach of death at any time during his illness, and was liable to die at any time ; that there was no reasonable apprehension nor did the deceased apprehend death was to immediately follow his act in making the alleged verbal will hereinafter mentioned.

"2.  That on the 31st day of March, 1903, at the place aforesaid, Dr. Charles Gardiner, one of his attending physicians, in the presence of said J. Hardin Baird, read a written memorandum to him, of which the following is substantially a copy : 'I, J. Hardin Baird, do make known that it is my desire and will, when the proper time comes, that the following-named persons shall have out of my estate the amounts hereinafter mentioned : (1)  To Mrs. Mary Baird Huntsinger, of Pinckneyville, Ill., twelve thousand dollars and the silver and china left by Emma Baird, and the right to choose any and every thing in the way of household goods in the room in the second story of the business house on Sixth avenue and Merchants street, Emporia, Kan. ; (2)  to T. L. McDill, of Emporia, Kan., the sum of ten thousand

dollars; (3) to Porter Baird, of Perry county, Illinois, the sum of ten thousand dollars and my watch; (4) to Ida Wallace, of Perry county, Illinois, seven thousand dollars and Emma Baird's watch; (5) to Mrs. Mary Baird Huntsinger's youngest brother, the watch of James Baird, deceased, and seven thousand dollars; (6) to Mrs. Martha Dickey, of Coulterville, Ill., the nine hundred dollars loaned to her on mortgage; (7) to Hardin Baird McDill, son of T. L. McDill, twenty-five dollars. And that Howard Dunlap, of Emporia, be my executor.'

"3. That the said memorandum was read item by item by said Doctor Gardiner to said J. Hardin Baird, and said J. Hardin Baird assented to each item by nodding his head in assent thereto. The deceased was not able to sign paper with a pen because of the partial paralysis of his arms.

"4. That at the time there were several persons present and heard the reading of such memorandum and witnessed the assent of J. Hardin Baird thereto. That among those persons under the circumstances stated were Charles Gardiner, J J. Wright, Mrs. Mary A. Roberts, Howard Dunlap, Mrs. T. L. McDill, and W. T. McCarty, an attorney at law.

"5. That after the same was read by said Doctor Gardiner and its provisions approved by said J. Hardin Baird, said J. Hardin Baird uttered audibly in the hearing of said persons the following words concerning said memorandum and its provisions, addressed to said persons, each and all: 'I want you to see that it is carried out the way I want it to be.'

"6. That the said memorandum had been theretofore prepared by the deceased himself and handed to said Doctor Gardiner; that the same was not signed by the deceased, nor did he request any person to sign the same for him, nor was the same subscribed by any person as a witness.

"7. That the formed purpose of the deceased was to make a verbal and not a written will, and he believed the memorandum unsigned was sufficient to carry out his purpose.

"8. That within ten days after the said 31st day

of March, 1903, the words substantially contained in said memorandum were reduced to writing and subscribed by two competent, disinterested witnesses, to wit, Dr. Charles Gardiner and Mrs. Mary A. Roberts, and the same was after the death of the deceased admitted to probate by the probate court of Lyon county, Kansas, as the verbal will and testament of the said J. Hardin Baird.

"9. That at the time said memorandum was read to said J. Hardin Baird he was of sound mind and disposing memory and was under no restraint or undue influence, and continued so until the time of his death.

"10. That the relationship and kinship of the parties hereto to said J. Hardin Baird is as alleged in the petition of the plaintiffs herein, which is hereby adopted and made a part of this finding.

"11. That Mrs. Mary Baird Huntsinger, nominated in the alleged verbal will, is a first cousin to the deceased; that T. L. McDill is a second cousin; that Porter Baird is a first cousin; that Ida Wallace is a first cousin; that Mrs. Martha Dickey is a first cousin; that the youngest brother of Mrs. Mary Baird Huntsinger is a first cousin; that Hardin Baird McDill, son of T. L. McDill, is a third cousin.

"CONCLUSIONS OF LAW.

"1. That the memorandum and alleged testamentary words contained therein read to the deceased and assented to by him are not a written will, because not signed by him, and not signed by any person for him at his express direction, and because not attested by two witnesses.

"2. That the said memorandum and alleged testamentary words contained therein are not a verbal will, for the following reason: That at the time of the uttering of the same the deceased was not in his last sickness, within the meaning of the law. Last sickness, within the meaning of the law's technical definition, means that the party must be *in extremis* or *in articulo mortis*. The deceased was not at the time prevented by surprise of sudden death from executing

a written will, and could have done so up to the date of his death.

"3. That the words spoken by the deceased do not show that he called upon some person present at the time of the assent to the memorandum to bear testimony of his disposition therein.

"4. That the heirs-at-law of the deceased, as set out in the petition of the plaintiffs, are entitled to inherit his property and are entitled to recover in this suit.

"5. That said alleged verbal will is void and of no effect in law."

There was little contradiction in the evidence, and these findings of fact might well be somewhat amplified in this statement by saying that it further appears that Mr. Baird before, at, and after, the time of the nuncupation was thoroughly impressed with the idea that his death was near at hand, as he had settled up his business and made arrangements about his funeral and burial, and had given directions as to gravestones. He had also frequently conversed with his spiritual adviser and others as to his preparation for death and his condition after death. His physical condition was such as to make him almost helpless during this time and to render his death a probable and expected event to himself, his friends, and his medical attendants.

These questions arise upon these facts: (1) What is the meaning of the term "last sickness" in the statute permitting the making of verbal wills? (2) Should it receive such a. construction as will cover the present case, or should it have the narrower meaning given by the court below? (3) Were the words used by the deceased at the time of the making of the will sufficient under the statute to call the attention of those present to bear testimony to the disposition which he was making of his property as his will?

Baird v. Baird.

These questions were decided by the court below adversely to the contention of the plaintiffs in error, who were the beneficiaries under the will, the court holding the verbal will void because it was not made "in the last sickness" and because the attention of the witnesses was not challenged by a sufficient *rogatio testium*. They are now here seeking to reverse this ruling.

The language of the statute involved (Wills Act, § 69, Gen. Stat. 1901, § 8007) reads as follows:

"A verbal will made in the last sickness shall be valid in respect to personal estate, if reduced to writing and subscribed by two competent disinterested witnesses within ten days after the speaking of the testamentary words, and if it be proved by said witnesses that the testator was of sound mind and memory and not under any restraint, and called upon some person present at the time the testamentary words were spoken to bear testimony to said deposition as his will."

Addressing ourselves to the first question, we call attention explicitly to the condition of the deceased at the time of the alleged nuncupation, as shown by the findings and facts: (1) He was in his last sickness— that is, he died seventeen days thereafter, of the disease with which he was at the time afflicted; (2) at that time he expected his death to occur at any time and had no hope of recovery; (3) the will was made in view of this expected death and as a provision therefor; (4) he was at the time weak physically, unable to sign his own name, and was liable to die at any time, although immediate death was not apprehended by him, and it did not immediately follow. Do these facts constitute "last sickness," within the meaning of the statute, or is the court's definition of that term, as found in its second conclusion of

law, correct? That is, must the party be *in extremis* or *in articulo mortis*, and must the deceased be prevented by surprise of sudden death from executing a written will, in order to execute a valid verbal one?

The first and most influential case upon this question is that of *Prince v. Hazelton*, 20 Johnson (N. Y.), 502, 11 Am. Dec. 307. This was a case decided by Chancellor Kent in 1822, who, after having disposed of the case upon its merits, by holding that the will in question was not entitled to probate because it was the production of fraud and perjury, went on to discuss the question here involved as to the meaning of the term "last sickness," and therefrom deduced the rule "that a nuncupative will is not good unless it is made by a testator when he is *in extremis*, or overtaken by sudden and violent sickness and has not time or opportunity to make a written will." Chief Justice Spencer, Justice Platt and a majority of the senators concurred. Dissenting therefrom were Justice Woodworth and a minority of the senators.

This construction has been followed by the supreme courts of Virginia, Pennsylvania, Maryland, Georgia, Mississippi, and New Jersey : *Reese v. Hawthorn*, 10 Grat. 548 ; *Case of Priscilla E. Yarnall's Will*, 4 Rawle, 46, 26 Am. Dec. 115 ; *Boyer v. Frick*, 4 W. & S. 357 ; *Conaughton's Will*, 11 Penn. Co. Ct. Rep. 460 ; *Rutt's Estate*, 200 Pa. St. 569, 50 Atl. 171 ; *Wiley's Estate, Forman's Appeal*, 187 id. 82, 40 Atl. 980, 67 Am. St. Rep. 569 ; *O'Neill et al. v. Smith, Adm'r of O'Neill*, 33 Md. 569 ; *Hammett v. Shanks*, 41 id. 201 ; *Ellington v. Dillard et al.*, 42 Ga. 361 ; *Scaife v. Emmons*, 84 id. 619, 10 S. E. 1097, 20 Am. St. Rep. 383 ; *Bellamy v. Peeler*, 96 id. 467, 23 S. E. 387 ; *Sadler v. Sadler*, 60 Miss. 251 ; *Carroll v. Bonham*, 42 N. J. Eq. 625, 9 Atl. 371.

Following these cases, most of the text-writers have

Baird v. Baird.

announced the same rule.   A contrary view has been taken by the supreme courts of Alabama, Tennessee, and Illinois :  *Johnson et al. v. Glascock & wife et als.*, 2 Ala. 218 ;  *E. M. Nolan v. W. B. Gardner et als.*, 7 Heiskell, 215 ;  *Harrington et al. v. Stees et al.*, 82 Ill. 50, 25 Am. Rep. 290.   These latter cases will be considered at greater length hereinafter.

Light is sought to be thrown upon the question by consideration of the common,law, and quite an elaborate discussion of it may be found both in the opinion of Chancellor Kent in *Prince v. Hazelton, supra*, and in the case of *Johnson et al. v. Glascock & wife et als., supra*, which was decided in 1841.   We do not think it of great moment to go into the details of this discussion.   It will be sufficient to remark that in the earlier stages of the common law, at least, verbal wills made by any competent person at any time while in the best of health were recognized as valid ; but a gross and palpable fraud that was brought to light in the case of *Cole v. Mordaunt*, 4 Ves. 196, caused the passage by parliament, in the twenty-ninth year of Charles II, of an act restricting the right to make such wills to those who should be in their last sickness.   We are not disposed to give much weight to these considerations.   Although we may remark that, as the right to make a verbal will would exist with little, if any, restriction in the absence of statute, we must view the statute as restrictive rather than permissive, and hence that it is to be carried no further than a reasonable interpretation of its terms requires.

It is true that the statutes of most of the states have limited the right to make verbal wills to much narrower bounds than does ours, and it is further true that in some of the states that right has been denied under most circumstances ; still the question that re-

Baird v. Baird.

mains for us is, What interpretation must be placed upon our own statute? It is sure that the right to make verbal wills yet remains under the terms of our statute, and we are not warranted in emasculating that statute by an interpretation which shall restrict the making of such wills to so narrow a compass as practically to deny the right; but we must, rather, adopt a construction that will be fairly reasonable and just, so as to carry out and effectuate under the ordinary and expected circumstances the purpose of the legislature in authorizing the execution of such wills. While it may be true that their execution is not to be encouraged, it is also true that the law must be reasonably interpreted and administered to permit the exercise of the right therein granted. The inquiry then is, As a practical proposition, how shall the phrase ''in the last sickness'' be construed? It must mean that the nuncupation must be had at some time during the progress of the sickness from which the nuncupator finally dies. If he should recover from the sickness which he had when he spoke the words, the nuncupation would be void.

We think that it is equally clear that the term should not be construed to cover a period of long duration or make valid a will pronounced at a time when the testator was neither in danger of approaching death nor expecting death within a short time. In one view, ''in the last sickness'' might be construed to mean all of that period during which the deceased was in any way afflicted with the disease which finally terminated fatally, but this construction does not recommend itself, for perhaps, actually considered, the seeds of the fatal disease were carried even from the cradle. In another view, ''in the last sickness'' may be interpreted as the end of the fatal illness,

Baird v. Baird.

because it is of the augmented force of accumulating disease that finally and lastly the afflicted one is removed. We think this latter interpretation, which is the one insisted upon by the defendants in error, and apparently adopted by the court below, equally unreasonable and untenable. If this be adopted, we are left without any guide whatever. "Last sickness," in this view, must mean the last expiring breath—the condition that immediately precedes dissolution—that condition indicated by the court below in its second conclusion of law as *in extremis* or *in articulo mortis*, or being surprised by sudden death. If we adopt this construction we practically deny the right to make a verbal will; for if a testator must wait until he shall be *in articulo mortis*, then he may have lost testamentary capacity, and when he has lost testamentary capacity he cannot make a will. At best, the question of the validity of the will because made too soon, or of testamentary capacity because made too late, would be the occasion of serious conflict in every case. We cannot believe that either of these extreme claims is founded in reason, but rather prefer to hold that the proper interpretation of the statute is that where the "last sickness" of one has progressed to such a point that the deceased expects, and is liable, to die at any time, and in view of its occurrence and as preparatory thereto a verbal will is made, and he does thereafter die of such disease, such will is valid and is "made in the last sickness;" that neither prior preparation to make such verbal will nor opportunity to make a written will at the time or thereafter would necessarily be determinative against the validity of the nuncupation.

In the case of *Johnson et al. v. Glascock and wife et als.*, *supra*, the court as its conclusion held :

"If a person in his last sickness—the sickness of which he subsequently dies—impressed with the probability of approaching death, deliberately makes his will, conforming to the statute, we do not feel authorized to say that it will be invalid because, in point of fact, he had time and opportunity to reduce it to writing."

In the case of *E. M. Nolan v. W. B. Gardner et als.*, *sup a*, after speaking of the words of their statute, which in substance is the same as ours, the court said :

"It is important to bear in mind that the power to make a nuncupative will is not derived from this statute.    The power existed independently of the statute.    The statute only places limitations and restrictions upon that power, and these restrictions will not be held to go any further than the plain and natural import of the language will justify.    The only requirement of the statute in this regard is that the will shall be made 'in the last sickness' of the testator ; but by the construction given to it by the court below, the sickness must be a sudden and violent one, and must progress so rapidly to a fatal termination as to make it impracticable to make a written will, or it must affirmatively appear that the means or facilities for reducing the will to writing were not at hand. Surely this is adding to the statute requirements not to be gathered from any fair construction of the language used, and such as would practically in most cases defeat wills of this character altogether."

In *Harrington et al. v. Stees et al.*, *supra*, it was held :

"It is contended, first, that this will was not made 'in the time of the last sickness' of deceased, in the sense in which the words are used in the statute.    It is strenuously insisted that such a will, to be valid, must have been made *in extremis*, or when the tes-

tator is overtaken by sudden and violent sickness and has not time or opportunity to make a witten will.   .   .   .''

"At common law, it was not essential to the validity of a nuncupative will that the testator should have been ill at all.   The statute is, in this regard, a limitation of the common-law powers.   The words 'in the time of the last sickness,' had no technical significdation at the time of the passage of the statute.   These words must be taken in their ordinary signification. The courts have no power to take from or add to the statute.   It is their duty to carry out the will of the legislature as found in the words of the statute, and the necessary and reasonable implications arising from these words.   The statute requires it to be proven that the will was made 'in the last sickness.'   It is a reasonable and necessary implication that it must also appear that the testator, at the time of making the will, supposed that his then sickness would prove his last sickness—in other words, that he should be impressed with the probability that he would never recover.''

The law being distinctly stated in the syllabus in that case as follows :

"If a person, in a sickness, from which he afterwards dies, being impressed with the probability of approaching death, deliberately makes his will in conformity to the statute, it will not be rejected because he may, in fact, have had time to reduce it to writing. It is not necessary that he should have no hope of recovery.''

From this conclusion, however, Chief Justice Breese dissented.

There is not a little show of reason in the proposition made by plaintiff in error, that the statute under which the leading case of *Prince v. Hazelton, supra,* was made requires a much stricter construction than does ours, for in several particulars that statute seems to restrict the right to make a verbal will to much

narrower limits than does ours.    We are not, however, placing our conclusion upon any fine-spun or even obvious distinction of this character.

Attorneys for defendant in error insist that we must here apply the rule of interpretation found in our statute (Gen. Stat. 1901, § 7342, subd. 2), where it is provided that "technical words and phrases, and such others as may have acquired a particular and an appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning," claiming that the words "in the last sickness" have acquired such peculiar and appropriate meaning.    In this we do not agree with them.    It can hardly be held that where courts of so high authority have so radically disagreed in the meaning to be attached to these words the legislature used them in the sense attributed to them by one court, rather than in that given them by another.

Turning now to a consideration of the last question involved, Was there a sufficient *rogatio testium?*    The words performing this function were : "I want you to see that it [referring to the verbal will] is carried out the way I want it to be."

The requirement of the statute is that the testator shall call " upon some person present at the time the testamentary words were spoken to bear testimony to said deposition as his will."    This provision of the statute must be substantially complied with in order that the will be valid ; it is not necessary that the exact words of the statute be used by the testator.    The rule is well stated in a note to the case of *Wiley's Estate, Forman's Appeal, supra,* in 67 American State Reports, on page 577, where it is said :

"It is not absolutely essential to the validity of the will that the testator should use the exact words of

Baird v. Laird.

the statute in requesting the persons present to bear witness that such is his will. It is sufficient if such desire is clearly and unequivocally manifested by the testator, but it is indispensable that he should expressly desire those present to bear witness that the words then expressed were his last will, or that he would say or do something equivalent to an express request. But any form of expression, however imperfectly uttered, so that it clearly conveys to the minds of those to whom it is addressed the idea that he desires them or some of them to bear witness to the disposition that he is then making of his property is sufficient."

In *Weir v. Chidester et al.*, 63 Ill. 453, the court said :

"Any words that express a clear intention to give the estate to a certain person will be sufficient to pass the property. Nor is it necessary that the testator should call upon persons present, by name, to become witnesses to his will. Any form of expression, however imperfectly uttered, so that it conveys to the minds of those to whom it is addressed the idea that he desires them or some one of them to bear witness to the disposition he is making of his property, will be deemed a compliance with the statute in that regard."

In *Bradford v. Clower*, 60 Ill. App. 55, the words, "you all know now what I want done, that is all I have got to say," were held to be a sufficient calling upon witnesses to bear witness to the deposition the testator was making. (See, also, *Owens Appeal in the Matter of Pritchard's Will*, 37 Wis. 68 ; *In re Will of Christopher Hebden*, 20 N. J. Eq. 473 ; *Matter of Estate of Grossman*, 75 Ill. App. 224.)

It is clear from the undisputed evidence that the bystanders thus addressed well knew what the deceased was doing ; that they understood his purpose and desire in the entire transaction ; and that by the

words used they were to become witnesses thereto. We think the court was in error in concluding that there was not a sufficient *rogatio testium* to satisfy the statute.

On the whole case, under the findings of fact, sustained and amply supported by the evidence as they are, we are of the opinion that the nuncupative will of J. Hardin Baird was executed under such circumstances, and with such formalities, as, by the provisions of our statute, to make it a valid nuncupative devise. We, therefore, reverse the judgment of the court below, and direct that judgment be entered for the defendants below, sustaining the probate of the will.

All the Justices concurring.