[No. 12617.   Department One.   August 20, 1915.]

JOHN BROWN, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.[1]

WILLS—NUNCUPATIVE WILL—REQUISITES—INTENT. Verbal instructions for a will or words spoken at the time of signing a writing intended as a written will cannot be proven as a nuncupative will, upon its appearing that the written will was not properly executed, there being ample time therefor; since there must be an intent to make an oral will, under Rem. & Bal. Code, § 1330, requiring the testator to bid some person present to bear witness, at the time of pronouncing the same, that such was his will.

Appeal from an order of the superior court for Ferry county, Pendergast, J., entered October 27, 1914, denying the probate of an alleged nuncupative will, after a hearing before the court. Affirmed.

[1]Reported in 151 Pac. 81.

*G. V. Alexander,* for appellant.

*T. E. Skaggs,* for respondent.

PARKER, J.—This is an appeal by John Brown from an order of the superior court for Ferry county, denying probate of an alleged nuncupative will claimed by him, as proponent, to have been made by C. T. Warren, late of that county. The state of Washington is respondent in this case because of the fact that it claims the property left by the deceased, by escheat.

On the 15th day of March, 1914, C. T. Warren signed a writing, the whole of which, together with the witnessing thereof, reads as follows:

"The Last Will and Testament of Charles T. Warren.

"Dated at Keller, Washington, this 15th day of Mar. 1914.

"In case of death, I wish to bequeath my property and money as follows:

"To Mrs. Belle Cody, One Thousand Dollars ($1,000), and lots 11 and 12 Block 35, and all improvements on same, situated in Harlinda.

"To John Brown, lots 1 and 7, block 47, in the town of Harlinda, and I also wish to give John Brown all my county warrants and notes, and what money is left after paying expenses.

"I hereby appoint John Cody executor of this will without bonds.                                   C. T. Warren
"Witness, I. J. Dickinson."

Thereafter, on the first day of April, 1914, C. T. Warren died. Thereafter, on the 14th day of May, 1914, this writing being apparently conceded by all parties interested to be defective as a written will because of its defective attestation by witnesses, as required by Rem. & Bal. Code, § 1320 (P. C. 409 § 29), John Cody and J. C. Cody, who were present when deceased signed the writing and were acquainted with the facts and circumstances attending its signing by deceased, reduced to writing their signed statement purporting to embody an oral testamentary disposition by the deceased

of his property, made at the same time he signed this paper, which it is insisted is in legal effect a nuncupative will.

For present purposes we shall assume that, on the 15th day of March, when the deceased signed this writing and when he is claimed to have made a nuncupative will, he was in his last sickness and then attempted to make a will, being prompted so to do under a sense of impending death. In other words, that he was then in such condition physically and mentally that he could have made a valid nuncupative will. However, we desire to have before us as we proceed, the fact that while he was very sick and threatened with early death on that day, he thereafter revived to such an extent that, for a few days before his death, he was sitting up and walking around unattended by a nurse, the nurse theretofore attending him having been discharged. It is also to be noted that he retained his mental faculties unimpaired up to almost the last moment of his life, that is, for a period of about fifteen days following his attempted making of a will.

John Cody testified for appellant with the view of establishing a nuncupative will, as follows:

"I reside in the county of Ferry, state of Washington, and have been over the age of sixty years during all of the times herein mentioned, I knew C. T. Warren, now deceased, on the 15th day of March, 1914, the date of the instrument now shown to me, marked as filed in this court on the 28th day of April, 1914, purporting to be the last will and testament of said C. T. Warren, now deceased.

"The said instrument was signed and executed by the said C. T. Warren, now deceased, at Harlinda (Keller Postoffice) in the county of Ferry and state of Washington, on the said 15th day of March, 1914, the day it bears date, in the presence of myself and in the presence of J. C. Cody, and I. J. Dickinson; and the said C. T. Warren, on said date, thereupon published the said instrument as, and declared the same to be his last will and testament, and requested said I. J. Dickinson, in attestation thereof, to subscribe his name as witness thereto, and the said I. J. Dickinson did, then and

there in the presence of said C. T. Warren, now deceased, and in the presence of myself and said J. C. Cody, subscribe his name as witness to said instrument.

"At the time of executing said instrument, to wit, on the 15th day of March, 1914, the said C. T. Warren, now deceased, was then over the age of twenty-one years, to wit, of the age of sixty-four years, or thereabouts, and was of sound and disposing mind and not acting under duress, menace, fraud, undue influence or misrepresentation.

"At the time said C. T. Warren executed said instrument, on said 15th day of March, 1914, the said C. T. Warren, in addition to asking said I. J. Dickinson to attest the same, and to subscribe his name as witness thereto, also bid myself and the said J. C. Cody to bear witness that such was his wish, desire and will. I further state that such written instrument, so signed by said C. T. Warren in the presence of myself and in the presence of said J. C. Cody and said I. J. Dickinson, was made at the dwelling-house of said C. T. Warren in the town of Harlinda in the county of Ferry and state of Washington, when the said C. T. Warren was then and there in his last sickness and in expectation of death on account of said sickness; that I was then and there well acquainted with said C. T. Warren, and said J. C. Cody and I. J. Dickinson, and also well acquainted with John Brown and W. L. Murphy, who were also then and there present at the residence of said C. T. Warren; that another paper or will, being the nuncupative will of said C. T. Warren, now deceased, now shown to me, and marked as filed in this court on this 14th day of May, 1914, and which states that it was reduced to writing by myself and J. C. Cody, was so reduced to writing by us, and fully, truthfully and fairly sets forth the wishes, desire and will of said C. T. Warren, concerning the disposition of his property, as the said Warren, or testator, pronounced the same on said 15th day of March, 1914, and that all the statements so made in said nuncupative will are true, and were by said testator so pronounced at the time and in the manner set forth in said nuncupative will, by said C. T. Warren, or testator, to myself and said J. C. Cody, who had been bidden by said Warren, or testator, to bear witness that such was his will and wish in disposing of his property."

J. C. Cody and I. J. Dickinson, the only other witnesses, testified in substance the same. The claimed nuncupative will here referred to by the witnesses purports to dispose of the property of the deceased exactly as the writing signed by him as a written will. This claimed nuncupative will is in fact nothing but an oral expression of deceased, of the same purport as the language of the instrument signed as a written will, which oral expression was made at the same time.

It would be difficult, indeed, to view these facts otherwise than as evidencing an intention on the part of the deceased to make a written will on March 15, 1914. The paper then signed by him purports upon its face to be his "last Will and Testament," and by the testimony of the witnesses here relied upon, referring to that paper: "C. T. Warren on said date thereupon published the said instrument as, and declared the same to be, his last will and testament." It seems plain to us that deceased intended to make a written will; and the fact that his attempt to make a written will failed because of defective attestation does not change the fact of that intent. Now his claimed intention to make an oral or nuncupative will, and the making of such a will, according to the contention of appellant, occurred, if at all, at the same time that he signed this writing as his written will. Just how this manifest intent to make a written will can be harmonized with his claimed intent to make an oral will at the same time is indeed difficult for us to comprehend.

Section 1330, Rem. & Bal. Code, provides:

"No nuncupative will shall be good when the estate bequeathed exceeds the value of two hundred dollars, unless the same be proved by two witnesses who were present at the making thereof, and it be proven that the testator, at the time of pronouncing the same, did bid some person present to bear witness that such was his will, or to that effect, and such nuncupative will was made at the time of the last sickness and at the dwelling house of the deceased, or where he had been residing for the space of ten days or more, except where such person was taken sick from home and died before his return."

In 1 Underhill, Law of Wills, § 168, it is said:

"A nuncupative will is defined by the early writers, 'as when a man lieth languishing for fear of sudden death, dareth not to set the writing of testament, and therefore he prayeth his curate and others to bear witness to his last will, and declareth by word, that is his last will.' "

And at § 174 the learned author further observes:

"It must be proved that the deceased, while uttering the words offered as a will, had a *present testamentary intention*, and that he intended that the *very words then uttered*, and no others, should constitute his will. If he gives instructions for a will which is subsequently to be drawn up and executed in writing, and it is not done; or if he gives oral directions which are taken down in the form of a will, which he fails to execute as a formal written will because of his death, unconsciousness or delirium coming on before he can do so, the writing cannot be sustained as a nuncupative will."

It has been many times said by the courts, in substance, that nuncupative wills are not favored in law; the reason apparently being the same as that which prompted the enactment of restrictive statutes like ours, which exist in most states touching the manner and the circumstances under which nuncupative wills may be made. That is because of the great opportunity for fraud and perjury attending the probating of such wills. All of the reasons calling for the enactment and enforcement of statutes of fraud are present here. This court in *In re Miller's Estate*, 47 Wash. 253, 91 Pac. 967, 125 Am. St. 904, 13 L. R. A. (N. S.) 1092, expressed some views which may seem to look with more favor upon such wills than did the courts in some of the earlier decisions, in so far as required proof touching the question of the last sickness of the deceased is concerned. In that decision, however, this court adheres to the rule that requires strict proof of the fact of the making of such a will.

A review of the decisions renders it plain that it is not only necessary that the deceased should intend to make a will, but that he should *intend to make an oral will*, as dis-

tinguished from a written will, before he will be held to have made a nuncupative will.

In *Wiley's Estate*, 187 Pa. St. 82, 40 Atl. 980, 67 Am. St. 569, the court said:

"Every one who undertakes to make a testamentary disposition of his property, must conform to the law regulating such disposition; and if he does not take care to do so, the law cannot uphold it. And in *Porter's Appeal*, 10 Pa. 254, it was held that the decedent must intend not only to make his will, but to make it in the form that it is presented for probate; that is, there as here, to make a nuncupative will. 'There ought therefore to be present in order to constitute a nuncupative will, not only the *animus testandi*, but the mind and intent to nuncupate.' It was accordingly held that, although the decedent declared his intentions to a scrivener who noted them in writing at the time and in the presence of decedent who called upon two persons present to witness that that was his will, yet it was not a valid nuncupative will because the testator had in contemplation a will to be put in writing."

In *Godfrey v. Smith*, 73 Neb. 756, 103 N. W. 450, the court observed:

"It will be noted that this provision of the statute requires that the will be proved by the oath of at least three witnesses who were present at the making thereof, and that it be proved that the testator, at the time, did bid the persons present, or some of them, to bear witness that such was his will, or to that effect. Under this provision of the statute it must be proved that the deceased, while uttering the words offered as a will, had not only a present testamentary intention, but also an intention to make an oral will, and that he intended that the words then uttered and no others should constitute his will. If he only gives instruction for a will that he desires to have reduced to writing, but fails to execute, the instructions cannot be sustained as a nuncupative will."

In *In re Will of Christopher Hebden*, 20 N. J. Eq. 473, the court said:

"He must intend, at the time, that the verbal declaration so declared shall be his will. This is entirely inconsistent

with the position contended for, that unexecuted verbal in-
structions for a will, which are intended to be reduced to
writing and signed, may be proved as a nuncupative will.
The very essence and substance of the matter is, that the
testator shall intend the declaration so made to be his will."

In *Reese v. Hawthorne*, 10 Gratt. (Va.) 548, the court
made similar observations as follows:

"Certainly no case has been cited, nor do I think any can
be found, which would justify us in extending the provisions
of the statute to a case like this; when there was not only no
purpose to make a nuncupative will, no want of opportunity
to make a written one; but where a written will was solemnly
and deliberately prepared, signed by the testatrix and sub-
scribed by the witnesses, with all the forms which they sup-
posed the law required to perfect it as a written will.   To
hold this a good nuncupation would be to obliterate most of
the distinctions between written and verbal wills, and to open
wide the door to the frauds which it was the object and pur-
pose of our statute on wills to exclude."

See, also, *Dockum v. Robinson*, 26 N. H. (6 Foster) 372;
*Stamper v. Hooks*, 22 Ga. 603, 68 Am. Dec. 511; *Scales v.
Thornton's Heirs*, 118 Ga. 93, 44 S. E. 857; *Male's Case*,
49 N. J. Eq. 266, 24 Atl. 370; *Porter's Appeal*, 10 Pa. St.
254.

Our attention is especially called to *Baird v. Baird*, 70 Kan.
564, 79 Pac. 163, 68 L. R. A. 627, which was cited and
quoted from with approval in the opinion of this court in
*In re Miller's Estate, supra*.   In the *Miller* case, this court
was dealing only with the question of last sickness and de-
ceased's sense of impending death.   However, in the *Baird*
case, while there was a memoranda made at the time the de-
ceased made his nuncupative will, which memoranda con-
tained the substance of it, the memoranda was not signed by
the deceased or intended by him in any sense to be a written
will.   We find no decisions holding words spoken at the
time of the signing of a writing, which writing was actually
intended by the deceased as a written will, to constitute the

making of a nuncupative will. There may be an exception where the intention to make a written will is rendered clear, and deceased is prevented by sudden death or extreme sickness during the preparation of a written will from formally executing it, though the decisions are not in harmony in recognizing such exception. 30 Am. & Eng. Ency. Law (2d ed.), 594. However, we have no such case here, since, as we have seen, the deceased lived fifteen days after the attempted making of his written will, with his faculties unimpaired up to the time of his death, during which time no attempt was made to make any will.

We conclude that the deceased did not make or intend to make a nuncupative will, and that therefore the trial court properly rejected probate thereof. The judgment is affirmed.

MORRIS, C. J., CHADWICK, MOUNT, and HOLCOMB, JJ., concur.