LEE *et al. v.* BARROW *et al.*

(Division A. March 10, 1930.)

[126 So. 648. No. 28405.]

**P. W. Allen,** of Indianola, and **Somerville & Somerville,** of Cleveland, for appellants.

**Shands, Elmore & Causey,** of Cleveland, for appellees.

**Smith, C. J.,** delivered the opinion of the court.

On August 14, 1926, Mrs. Jennie L. Lee executed a written will. Thereafter, and during what we shall assume was her last illness, she attempted to make another will, disposing of personal property only. The facts relating to this second alleged will are about as follows: On May 20, 1928, while suffering with Bright's disease, and evidently quite ill, she went to a hospital, and remained there until she died, on June 22d. On May 31st she underwent a nasal operation, the character of which does not appear; but we shall assume, as there is some evidence to that effect, that she was thereafter incapacitated to execute a will. On May 30th she determined to make

another will, disposing of certain personal property, and we shall assume that she then feared the result of her approaching operation. She was in bed, could not write with her left hand, and her right arm and hand were so bandaged that it was impossible for her to use her right hand. She told two of her nurses that she desired to make a will, and asked them to witness it. Thereupon she dictated to Mrs. Thornton, one of her nurses, the following letter addressed to the gentleman named as her executor in her former will:

"Kings Daughters

"Greenville, Miss., May 30, 1928.

"Mr. George Stephens, Shaw, Miss.—Dear Sir: Im am at the Hospital have improved some will have to undergo slight operation in the morning. Enclosed you will find some legal papers and also key to my safter box in the bank In leaving there directed to you in case anything should happen and my will is in my dresser drawer in a beaded purse addressed to you and has not been recorded in which I have named you executor and in case anything happens to me I hope that you will not refuse to act as executor You know all about my business and have made all loans for me I want Britt Lee and Pauline Cameron Lee to have $200.00 certificate and all indebtedness of Britt L. Lee to me be cancelled and papers turned over to him marked paid.

"I know of no one else that I have more confidence in and that would be any more efficient than you are. I am as ever.

"Yours          Mrs. Jennie L. Lee,

"By (Mrs.) W. A. Thornton (Nurse)."

This instrument was written in the presence of the witnesses by Mrs. Thornton, at Mrs. Lee's dictation; was read over to Mrs. Lee, and her name was signed thereto by Mrs. Thornton at her request. It was not attested by the signature of any witness. Mrs. Thornton testified, in part, as follows:

"She asked me to write it and to witness it, that this was her will. She stated she wanted to make a will and wanted me to write it.

"Q. State to the jury with reference to this writing, if it was written by you, Mrs. Thornton, was this writing handled and dealt with as a letter or will? A. No, as a will.

"Q. What if any instructions did Mrs. Jennie L. Lee give about this instrument? A. Said for me to seal and address to Mr. Stephens and in case anything happened mail it immediately.

"Q. Now are you positive she said she wanted this to be her will? A. Yes, sir.

"Q. Now you state that Mrs. Lee told you that she wanted to execute this instrument as her will and wanted to dictate it to you? A. She wanted me to write it as she dictated."

The testimony of the other nurse, Miss Wilson, was:

"She said I'm going to make a will to Pauline and Britt . . . and I want you to witness it. . . . Mrs. Thornton wrote the will and I witnessed it.

"Q. When it was written what was done with the will then? A. Well, Mrs. Thornton first read it over to her.

"Q. What did Mrs. Lee say? A. Says now seal it in an envelope.

"Q. You say Mrs. Lee called Mrs. Thornton and told her she wanted to have Mrs. Thornton write her will? A. She said I am fixing to write a will and I want you to be present; she could not write. She called Mrs. Thornton to write it for her because she was her special nurse.

"Q. She said she wanted that to be her will? A. Yes sir.

"Q. When Mrs. Thornton got through she said that was her will? A. Yes sir."

This instrument is here attempted to be probated as a nuncupative will. An issue devisavit vel non was made up, and at the close of the evidence the court directed the

jury to return a verdict for the contestants, and there was a judgment accordingly.

Section 5082, Code of 1906, section 3570, Hemingway's 1927 Code, permits but does not define nuncupative wills; but, according to all of the authorities, a nuncupative will is a testamentary declaration, not in writing, made before a sufficient number of witnesses, and by the decided weight of authority, when the testator "is in extremis, or overtaken by sudden and violent illness, and has not time or opportunity to make a written will." 40 Cyc. 1134; Parkison v. Parkison, 12 Smedes & M. 672; Sadler v. Sadler, 60 Miss. 251; Donald v. Unger, 75 Miss. 294, 22 So. 803. The testator must intend that the declaration he then makes should constitute his will, and not that it should be embodied in a written instrument, which instrument should then become his will. Andrews v. Andrews, 48 Miss. 220; Donald v. Unger, 75 Miss. 294, 22 So. 803; Kennedy v. Douglas, 151 N. C. 336, 66 S. E. 216; Porter's Appeal, 10 Pa. 254; Brown v. State, 87 Wash. 44, 151 P. 81, Ann. Cas. 1917D, 604; In re Hebden's Will, 20 N. J. Eq. 473; Stamper v. Hooks, 22 Ga. 603, 68 Am. Dec. 511; Ellington v. Dillard, 42 Ga. 361.

That the testamentary declaration was reduced to writing, and approved by the testator, does not necessarily destroy its nuncupative character; the test being whether or not the testator intended the declaration itself to constitute his will, or for it to become so only when embodied in a written instrument, which instrument itself was to become effective as his will.

In Donald v. Unger, supra, the testator directed that a written will be drafted, but clearly intended, as the court held, that his oral declaration should constitute his will, in event his death intervened before it could be reduced to writing and executed by him.

We shall leave out of view that the event seems to indicate that at the time Mrs. Lee dictated this letter to Mrs. Thornton, she had both the time and the opportu-

nity to make a written will, except in so far as that fact may bear on whether she intended the letter to become operative as a written will. As hereinbefore set forth, Mrs. Lee dictated her statement in the form of a letter to her executor, advising him what disposition she wished made of certain property; and while she did not sign the letter in person, she had it signed for her by another, and evidently thought that by so doing she had effectually indicated her intention to her executor, and that he would be authorized to act thereon; that her will was to become effective, not because of her oral declaration thereof, but because embodied in a writing to which her name, which she adopted as her signature, was appended.

It is true that she asked the two nurses to witness her will, but it seems clear that what she meant was that they should be witnesses to the fact that she intended the letter she was then dictating to be her will.

What we have, then, is simply a defectively executed written will, and such a will cannot be probated as a nuncupative will. It is true that there are a few decisions to the contrary, but they are not in accord with the weight of authority; and, according to 1 Page on Wills (2 Ed.), section 378: "This view of the law apparently ignores an essential element of nuncupative wills, is due, in part, to a desire to enforce the wishes of testator; and possibly, in part to the influence of the old rule that bequests of personalty were valid if shown to be testator's wishes, without regard to their form."

Affirmed.