Estate of Sarah A. Wiley, Deceased. Appeal of William W. Forman.

*Will—Nuncupative will—Evidence.*

In order to constitute a nuncupative will each requisite of the statute must be strictly proved, and it must be shown that there was present not only the animus testandi, but also the mind and intent to nuncupate.

The testamentary words of the decedent as committed to writing and offered for probate were "Everything is to go to Willie, everything is Willie's. I want everything to go to Willie." Two of the three witnesses to whom the words were addressed testified to them at the hearing in substantially the same form. The third witness stated them with an addition as follows: "' Mary, don't you or the children worry about anything, I want Willie, brother Willie," she said, 'to have everything—it has been put off. I intended to fix it so there would be no trouble, but it has been put off.'" The witness further said "she realized then she was not able to do anything." Other witnesses testified that on several previous occasions decedent had used similar words as to her intention, as soon as she was able to "fix everything for brother Willie." There was no evidence that decedent made any explicit call on persons present to bear witness that the declarations which she made were intended as her will. The nurse testified that the decedent requested the presence of her family, but the purpose of the request was not stated. *Held*, that the evidence was not sufficient to establish a nuncupative will.

Argued March 31, 1898.   Appeal, No. 418, Jan. T., 1897, by William W. Forman, from decree of O. C. Phila. Co., affirming decision of Register of Wills.   Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Appeal from register of wills, refusing to admit to probate an alleged nuncupative will.

Sarah A. Wiley, aged seventy-two years, died, leaving one brother, William Wiley Forman, and nephews and nieces.   She had been an invalid for a number of years before her death, and had been confined to her bed by illness at various times during this period; her principal ailment having been that of rheumatism, which among other physical disabilities had affected her hands to such an extent that she was able to write only with great pain and labor.   At the time of her death, and for a long time previous thereto, she had been living with her brother, William Wiley Forman, at his residence.

The paper offered and rejected was as follows:

" Whereas, Sarah A. Wiley, widow, late of the city of Philadelphia and state of Pennsylvania, died on the twenty-third day of February, A. D., 1897, and during her last sickness and in the house of her habitation, where she had resided for the space of ten days or more next before making such will, being of sound and disposing mind, but being physically unable to write or sign her name to a will, made her last will on the twenty-second day of February, A. D. 1897, and at the time of pronouncing her bequest she did bid the undersigned persons present to bear witness that such was her will in the following words, to wit: 'Everything is to go to Willie.   Everything is Willie's.   I want everything to go to Willie, he is the only one who has taken care of me,' meaning thereby her only brother, William W. Forman, who was also present at the pronouncing of the aforesaid bequest.

" Witnessed and signed by us to the above as being the last will and testament of the said Sarah A. Wiley at Philadelphia, Pa., on the twenty-eighth day of February, A. D. 1897.

                              " MRS. MARION S. ROWLAND,
                              " MRS. MARY G. FORMAN,
                              " SALLIE WILEY FORMAN."

The evidence in support of the alleged will is stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court affirming decision of register of wills in refusing to admit will to probate.

*Wm. Henry Lex* and *John G. Johnson*, with them *Christopher Hager*, for appellant.—Mrs. Wiley was in extremis and suddenly overtaken by her illness, so that when informed of her condition she had not the time nor opportunity to make a written will. And in being so informed did not realize the seriousness of her condition, and was surprised when she realized she was in extremis : Conaughton's Est., 30 W. N. C. 202.

Mrs. Wiley, in effect, bade the persons present to bear witness to her will: Arnett v. Arnett, 27 Ill. 247 ; Baker v. Dodson, 4 Humphreys, 342.

*Peter Boyd*, with him *George W. Wilgus*, for appellees.—A nuncupative will can only be allowed in a case where it was made in the extremity of the testator's last sickness, which has come upon him so suddenly, unexpectedly and violently as to prevent him putting his testamentary wishes in writing : Boyer v. Frick, 4 W. & S. 357 ; Yarnall's Will, 4 Rawle, 46 ; Porter's App., 10 Pa. 254 ; Werkheiser v. Werkheiser, 6 W. & S. 184 ; Stricker v. Groves, 5 Wh. 397.

It is submitted, that none of the requirements of the law relating to nuncupative wills, was complied with in the present case: Act of April 8, 1833 ; Conaughton's Est., 30 W. N. C. 202 ; Taylor's App., 47 Pa. 31 ; Haus v. Palmer, 21 Pa. 296 ; Bennett v. Jackson, 2 Phillimore, 190 ; Biddle v. Biddle, 36 Md. 630.; Dawson's App., 23 Wis. 69 ; Arnett v. Arnett, 27 Ill. 247 ; Baker v. Dodson, 4 Humphreys, 342.

OPINION BY MR. JUSTICE MITCHELL, July 21, 1898 :

The testamentary words of the decedent as committed to writing and offered for probate are : " Everything is to go to Willie. Everything is Willie's. I want everything to go to Willie." Two of the three witnesses to whom the words were addressed testified to them at the hearing in substantially the same form. The other witness, Mrs. Forman, stated them with a context as

follows, "Mary don't you or the children worry about any-thing. I want Willie—brother Willie, she said—to have every-thing. It has been put off; I intended to fix it so there would be no trouble, but it has been put off." "She realized then," continued this witness, "she wasn't able to do anything." This testimony is open to two constructions, either that the words of the decedent were an expression of the intentions she had enter-tained but which she now realized it was too late to carry out, or that they were an effort to carry them out by a nuncupative will, as she had put off until too late the making of a will in writing. Even if the latter construction was clear, however, it would be unavailing, as the words rest on the testimony of a single witness where the statute requires two. It may well be doubted therefore upon any of this testimony standing alone whether the decedent herself regarded her words as an actual making of a will. And this doubt is greatly strengthened by the other testimony of one of the same witnesses, the nurse, Mrs. Row-land, that the decedent had on several previous occasions used almost the same words, coupled with the expression of an inten-tion as soon as she was able to go down and "fix everything for brother Willie," as she wanted him "to have everything." " Q. She had said those same words to you a week previous, and also a month before that? A. Yes, sir. She said she was going down to settle everything; and she was getting ready to go down when she was taken suddenly ill." No doubt these were the expressions of her settled testamentary intentions, but that is not enough. All our cases agree that each requisite of the statute must be strictly proved, and the very first requisite not only of nuncupative but of all wills is the animus testandi. In Werkheiser v. Werkheiser, 6 W. & S. 184, it is said, the conversations " it is true, go to show the intent of the decedent. But this is not enough. Every one who undertakes to make a testamentary disposition of his property, must conform to the law regulating such disposition; and if he does not take care to do so, the law cannot uphold it." And in Porter's Appeal, 10 Pa. 254, it was held that the decedent must intend not only to make his will, but to make it in the form that it is presented for probate; that is, there as here, to make a nuncupative will. " There ought therefore to be present in order to constitute a nuncupative will, not only the animus testandi, but the mind

and intent to nuncupate." It was accordingly held that, although the decedent declared his intentions to a scrivener who noted them in writing at the time and in the presence of decedent who called upon two persons present to witness that that was his will, yet it was not a valid nuncupative will because the testator had in contemplation a will to be put in writing.

In the present case, regarded in the light of our decisions on the subject, the decedent's intent to make a nuncupative will by the language proved is not sufficiently clear to sustain the will proffered.

But there is another aspect in which the appellant's case even more manifestly fails. There must not only be the testator's intent to make a will then and there, but an explicit call on persons present to bear witness that such was the intended effect of the testator's declaration. The words of the statute are that "it shall be proved that the testator at the time of pronouncing the bequest did bid the persons present, or some of them, to bear witness that such was his will, or to that effect:" Act of April 8, 1833, sec. 7, P. L. 249. The phrase "or to that effect" was intended to prevent the inference that any set form of words should be necessary, but not to diminish the requirement of a distinct and explicit request by the testator to persons present to remember and be ready to testify that the testator was thereby making his will. "The rogatio testium, the calling on persons to bear witness to the act, must also be done at the time of the nuncupation, and must be proved by two or more witnesses who were present at the time:" Yarnall's Will, 4 R. 46, 63. There is an entire absence of affirmative evidence that the decedent in this case bade the persons who testified to bear witness that what she was saying was her will, or that she used any expression which, even by liberal construction, can be treated as a request "to that effect." She did desire the presence of the family, but even that is only proved by one witness, the nurse, and the purpose was not stated. It may be inferred, but the inference is not certain, and even if it were it is not enough. There must be clear proof. And very strong evidence to the contrary is furnished by the appellant himself, who on the day of decedent's death wrote to his nephew, the contestant, in terms implying that she had died without a will. If the beneficiary who was present

when the words constituting the alleged will were spoken, did not then understand that there was any such will, it is clear that the case falls far short of the degree of proof the statute requires.

The court below also held that the will was ineffectual because not made in the extremity of the decedent's last sickness. On this point we entertain some doubt. There are mental as well as physical elements in such matters, and one of the former is the hopefulness of invalids who are unwilling to believe that death is near. Therefore, although there was sufficient time, even after the physician had warned the decedent to settle her affairs, for her to have made a will in writing, yet if she through misplaced confidence in her ability to "pull through," as the doctor expressed it, postponed doing so, it would not necessarily follow that she might not yet make a valid nuncupative will. But it is unnecessary to consider this point further, as the will clearly fails on the others.

Decree affirmed.