[Civil No. 2897.   Filed April 14, 1930.]

[286 Pac. 817.]

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant, v. PAULA M. DE JOHNSON, Appellee.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Mr. Wm. J. Fellows, for Appellee.

LOCKWOOD, C. J.—This is an action by Paula M. De Johnson, hereinafter called plaintiff, against the Equitable Life Assurance Society of the United States, a corporation, hereinafter called defendant, to recover on a policy issued by defendant insuring the life of Clark Victor Johnson, and payable to plaintiff. The case was tried to a jury which returned a verdict in favor of plaintiff, and from the judgment rendered thereon defendant has appealed.

There is but one issue for us to consider on the appeal, and that is whether or not the evidence sustains the verdict. The policy contained a provision that if the insured committed suicide within one year from the date of issuance, defendant's liability should be limited to an amount equal to the premium paid only. Defendant admitted the death of Johnson, but claimed that he committed suicide. This was the only controverted issue before the jury, and it is the contention of defendant that the verdict, which in effect meant that it was not proved the deceased did commit suicide, was directly contradictory to the only evidence in the case. It is the well-known rule of this court that when there is a conflict in the evidence so that a reasonable man might find the issues in favor either of plaintiff or defendant, we will not disturb the verdict of the jury on the facts. This has been held by us so often that no citation is needed to sustain it. On the other hand, it is equally true that where the evidence is of such a nature that a reasonable man could find only one state of facts to exist, a verdict which necessarily is based on the assumption of an opposite situation will not be allowed to stand. The law applicable to cases of this nature may be stated as follows: Where the defense of suicide is set up in an action by a beneficiary on an insurance policy, the burden of proving that the deceased committed suicide is upon the defendant. In the absence of proof of the cause of death, the presumption is against suicide. These principles are supported fully by the adjudicated cases. In addition thereto, it is almost universally held that when circumstantial evidence is relied on, the defendant must establish facts which exclude any reasonable hypothesis of anything except suicide. *Boynton* v. *Equitable Life Assur. Soc.,* 105 La. 202, 52 L. R. A. 687, 29 South. 490; *Aetna Life Ins. Co.* v. *Milward,* 118 Ky. 716, 4 Ann. Cas. 1092, 68 L. R. A. 285, 82

S. W. 364; *Jenkin* v. *Pacific Mut. Life Ins. Co.*, 131 Cal. 121, 63 Pac. 180; *Home Benefit Assn.* v. *Sargent*, 142 U. S. 691, 35 L. Ed. 1160, 12 Sup. Ct. Rep. 332; Bacon on Life and Accident Insurance, 4th ed., par. 438; and in cases where either conclusion could be reached, the question is one for the jury. *Neasham* v. *New York Life Ins. Co.*, (D. C.) 244 Fed. 556; *Bromberg* v. *North American Life Ins. Co.*, 192 Mich. 143, 158 N. W. 141.

On the other hand, there is a limit beyond which even a jury may not go, and that is the line of reasonable probability. If the evidence be such that there is no reasonable theory which can be deduced from the evidence—even though there may be a possible or conjectural one not based on the testimony—on which the jury may find the death was not the result of suicide, a verdict which negatives suicide cannot be sustained. *Hart* v. *Supreme Lodge of Fraternal Alliance*, 108 Wis. 490, 84 N. W. 851; *Supreme Lodge Knights of Honor* v. *Fletcher*, 78 Miss. 377, 28 South. 872, 29 South. 523; *Mott* v. *Sovereign Camp, W. O. W.*, 155 Ark. 259, 244 S. W. 733; *Hodnett* v. *Aetna Life Ins. Co.*, 17 Ga. App. 538, 87 S. E. 813; *Agen* v. *Metropolitan Life Ins. Co.*, 105 Wis. 217, 76 Am. St. Rep. 905, 80 N. W. 1020; *Rens* v. *Northwestern Mut. Relief Assn.*, 100 Wis. 266, 75 N. W. 991; *Green* v. *New York Life Ins. Co.*, 192 Iowa 32, 182 N. W. 808; *Deweese* v. *Sovereign Camp, W. O. W.*, 110 Kan. 434, 204 Pac. 523.

With these rules before us, let us consider the evidence bearing on the question of whether the death of the insured was caused by suicide or some other reason.

It is entirely circumstantial in its nature, but there is no conflict therein, nor is there the slightest reason to suspect that any of the witnesses who testified were not telling the absolute truth. Such being the case, the jury was bound to accept their testimony

as to the facts which actually existed. *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947; *Crozier* v. *Noriega,* 27 Ariz. 409, 233 Pac. 1104.

Deceased was a man of about fifty-seven years of age, and had been engaged as a miner either in the United States or Mexico for many years. His health was as good as that of the ordinary man of his age, except that when he changed from day to night shift he was slightly troubled with insomnia for a few days and would then get some medicine from the doctor to cause him to sleep better. His domestic relations were apparently happy, and he had no financial difficulties of any kind, nor had there been anything in his conduct which would have caused the ordinary person to suspect he contemplated suicide.

On the 17th of February, 1928, he went to his work at about 3:00 P. M. as pumpman on the 2,000 foot level of the Magma mine in Superior. His duties were such as to require him to remain continuously at or near this station until he was relieved. The main shaft of the Magma mine is what is known as a three compartment shaft, about two thousand six hundred and fifty feet in depth, and approximately four feet by fifteen feet in cross-section. These compartments are separated from each other by a lattice-work of heavy timbers. The pumping station is a chamber in the rock adjoining the shaft across the longer dimension, the pumps being located about fifty feet back from the shaft. The openings from the pumping station into the compartments are guarded by heavy wooden bars placed across them, about waist high. Some forty feet below the pumping station is a loading station running back into the rock about five feet and across the three compartments of the shaft. This loading station can be reached from the pumping station either by climbing down a manway ladder in one compartment of the shaft, or by going down on the cage. About 6:00 P. M. it was

reported to the night foreman that Johnson was not at his station. The foreman immediately began an investigation, and shortly thereafter found Johnson's body at the bottom of the No. 1 compartment of the shaft. It was terribly mangled, practically every bone being broken, and blood all over the body and the bottom of the compartment. On the neck of Johnson was found a cut which extended practically from ear to ear, through the skin and partly through the muscles, being deeper at the left side and tapering off to the right, evidently caused by a very sharp instrument such as a razor blade or a surgeon's scalpel. While it did not sever the greater blood vessels of the neck, it was of such a nature that if unattended it would have caused death by bleeding in approximately twenty minutes. Lying at the bottom of the No. 2 compartment adjoining the one where the body was found was an old-fashioned razor blade, the point of which was slightly broken; and about two hundred and fifty feet below the pumping station a couple of razor blade handles were found lying in the wall plates or timbering around the shaft closest to the walls. In the dust on the floor of the loading station, a single set of footprints was found extending from the manway compartment of the shaft toward the center of the shaft, but showing no return. On the dust on the wall plates in the side of the shaft at the loading station was a mark apparently of where a man had been sitting, and on the iron floor just below this mark was a considerable amount of blood. On the sides of the hoisting compartments of the shaft are 4x6 timbers used to guide the skip, or elevator cage, up and down, and hanging in the timbers between the compartments, about the level of the loading station, was an electric light globe. This was smeared with blood and there were a number of bloody fingerprints on the guides in the compartment extending

down from the station for some hundred feet. No blood stains or marks of anything out of the ordinary were found anywhere near the pumping station. The razor blade and handles were identified as similar in appearance to a razor which had been used by Johnson at the pumping. station for some time for the purpose of cutting gaskets for the pump. This is substantially all the evidence bearing on the cause of death. Can it be said that a reasonable man could from the evidence draw any other conclusion than that Johnson had cut his own throat in an endeavor to kill himself, and had then climbed down the shaft until he fell to his death?

In determining whether or not a chain of circumstances necessarily as a matter of law leads to a given conclusion, we think the following to be a reliable test: First, is the assumed conclusion consistent with all of the known circumstances; and second, are any of these circumstances inconsistent with any other conclusion? If the answer to both questions is in the affirmative, then the assumed conclusion is a matter of law for the court, and a verdict should be instructed in conformity therewith. If, on the other hand, there is more than one conclusion consistent with all of the known facts, the question is one for the jury, and their decision will not be disturbed by the appellate court.

There is but little aid for us in the adjudicated cases, as each one necessarily depends upon its own facts, and in no two cases are these facts exactly the same. It seems to us that while the foregoing facts indicate a strong probability of suicide, yet we cannot say that they are so utterly inconsistent with the possibility of an attempted homicide and a fall as the result of deceased's attempt to escape from his assailant that the matter was not properly left to the jury. Such being the case, we may not sub-

stitute our own opinion as to the true situation for the conclusion of the jury.

Judgment affirmed.

McALISTER and ROSS, JJ., concur.