[Civil No. 4200.   Filed October 28, 1940.]

[106 Pac. (2d) 492.]

In the Matter of the Estate of JOHN L. TAYLOR, Deceased.   BERNARD C. BLACK, Appellant, v. EZEKIEL B. TAYLOR and EZEKIEL B. TAYLOR, as Administrator of the Estate of JOHN L. TAYLOR, Deceased, Appellees.

Messrs. Wilson, Compton & Wilson, for Appellant.

Messrs. O'Sullivan & Morgan and Mr. E. C. Locklear, for Appellees.

LOCKWOOD, J.—John L. Taylor, hereinafter called deceased, died on the 4th of February, 1939, leaving surviving as heirs at law thirteen nieces and nephews and two children of a deceased niece. The illness of which he finally died commenced about January 10, 1939, at which time he moved to the home of one of his nephews, Bernard C. Black, where he was confined until the time of his death. On Sunday, January 29th, deceased told one Butler, in the presence of two other witnesses, that he desired to make a will, and requested that Butler go to Flagstaff and have C. B. Wilson, his attorney, prepare a form of written will, full details of which had been given to Butler. In accordance with these instructions, Butler did go to Flagstaff, had the will drawn, and on Monday, January 30th, returned to the home of Black, where deceased was confined, with the form of will as drawn. Evidently the parties knew that Taylor was in a very weakened condition for the will was prepared in such a manner that he might, if he desired, sign it by making his mark. For some reason, although the will was at the Black place on Monday, it was not presented to deceased for his signature until Friday.

The foregoing facts are undisputed. In addition, the following evidence appears in the record. At that time Butler, his wife and their daughter, Bessie Carlisle, being present, the following conversation, according to Mrs. Carlisle, occurred:

"Well, my dad said 'Uncle John, I have these papers here that you wanted fixed,' and he said 'all right.' He said 'I would like to have Bessie read them,' and I took them and read them to him and took my time and read them pretty slowly and asked him if he understood and he said he did, and when I finished reading

them why he made an effort to sign them and he tried to move his hands and he didn't seem to be able to, so I just walked over and kind of pushed the covers back, and he still could not raise his hands, so he just says, 'I am too weak. I can't sign it, but that is my will and I want you to be witnesses. I want you, Mr. Butler, to see that it goes that way.'

"Q. What was the last part of your answer as I did not get it?

"The court: Will you try to speak a little louder?

"The witness: I want you to see, Mr. Butler, that it goes that way."

Butler and his wife testified, respectively as follows:

"Q. When he wanted you or asked you to witness what he wanted done he wanted you to witness this particular will? A. Yes.

"Q. This document, exhibit one? A. Yes, sir.

"Q. None of you did that? A. No, sir.

"Q. In his presence? A. No, sir; we never did sign that.

"Q. Did he say 'I want you three people to witness that will?' A. Yes, sir.

"Q. This written will right here? A. Yes, sir.

"Q. You did not witness it, did you? A. No."

The written will was never signed either by the deceased or by any witnesses, and the former passed away shortly thereafter.

Bernard Black, the nephew of deceased and the person named in the nonexecuted will as executor, filed a petition alleging that deceased had made a nuncupative will in the precise terms of the written will, and prayed that it be admitted to probate. Ezekiel Taylor, appellee herein, another nephew, filed a written opposition to the will, and also an application for his appointment as administrator, on the theory that deceased had died intestate.

Hearings on the two petitions were had by the court sitting without a jury, and it made the following findings:

"The court finds that John L. Taylor died intestate on February 4, 1939, in Yavapai County, Arizona, and left estate in said Yavapai County, Arizona. That from Monday, January 30, 1939 to Friday, February 3, 1939, inclusive, a period of four days, a written will drawn according to his instructions was available for execution by the deceased, either by his own hand, by his mark, or by another at his direction and in his presence. That during the entire period of his last illness the deceased was of sound mind and competent to make a last will and testament. That the said John L. Taylor never made a will of any kind, and said deceased never intended to make an oral or nuncupative will. That petitioner, Ezekiel B. Taylor, is a nephew of the deceased, a resident of Yavapai County, Arizona, and is entitled to Letters of Administration of the estate of said John L. Taylor, deceased."

Upon these findings, the probate of the alleged nuncupative will was denied, and letters of administration were issued to Taylor.

■■ The question before us is as to whether the court erred in finding that deceased died intestate. If the factual situation above set forth shows that he made a valid nuncupative will, the conclusion of the court was wrong. If he did not, it was right, for admittedly no written will was executed which would pass the test set by our statute. It is the universal rule of this court that if there be sufficient evidence appearing in the record to sustain the findings of the trial court on the facts, we will not disturb such findings even though there be other evidence which would justify a different conclusion. It is equally well settled, however, that if the facts are not in dispute, while this court will consider carefully the conclusions of law drawn from those facts by the trial court, it is not bound thereby. The vital finding upon which the decision must turn is the following:

"That the said John L. Taylor never made a will of any kind, and said deceased never intended to make an oral or nuncupative will."

Section 3639, Rev. Code of 1928, reads as follows:

*"Nuncupative will; proof; limitation on.* Any person, competent to make a last will and testament, may dispose of his property by a nuncupative will. A nuncupative will shall not be established unless it be made during the last sickness of the deceased, nor, when the value of the estate exceeds fifty dollars, unless it be proved by three credible witnesses that the testator called on some person to take notice or bear testimony that such is his will, or words of like import; it shall not be proved until fourteen days after the death of the testator, nor until those who would have inherited, had there been no will, have been summoned to contest the same. After six months from the time of speaking the pretended testamentary words, no testimony shall be received to prove a nuncupative will, unless the testimony or substance thereof was reduced to writing within six days after making the will."*

██  Although nuncupative wills disposing of personal property were recognized at common law, they are not favored and have been greatly restricted by statute, and can only be sustained when they comply with the provisions of the statute. This is the general rule in order to prevent fraudulent practices and the fabrication of wills. The term is not defined by our statute, but the usually accepted definition is that a nuncupative will is one which is not written but is declared orally by the testator in his last illness, in the manner specified by the statute, and section 3639, *supra,* obviously assumes this definition.

█  In the present case, taking the testimony as strongly as reasonably possible in support of the findings of the trial court, as under our oft-repeated rule we must take it, the testator intended to execute a written will, and had one prepared which was read to him and approved by him, and which he made an effort to sign. Up to that time obviously he had no intention of making a nuncupative will. When, however, he found that he was unable to sign the written instru-

ment, he did not, as he might legally have done, sign it by mark, or call upon some one person to sign the will for him in his presence. He stated, in substance, that the instrument was his will; that he wanted those present to witness that it was his will, and to see that it was carried out.

■■ We think that these facts reasonably sustain the finding of the trial court that the deceased did not intend, nor attempt, to make an oral will, but rather show that he endeavored to adopt a written will by oral statements. That this does not constitute a valid nuncupative will is held by the great majority of the authorities. *Porter's Appeal,* 10 Pa. 254; *Reese* v. *Hawthorn,* 10 Grat. 548, 51 Va. 548; *In re Wiley's Estate,* 187 Pa. 82, 40 Atl. 980, 67 Am. St. Rep. 589; *Godfrey* v. *Smith,* 73 Neb. 756, 103 N. W. 450, 10 Ann. Cas. 1128; *Kennedy* v. *Douglas,* 151 N. C. 336, 66 S. E. 216; *Male's Case,* 49 N. J. Eq. 266, 24 Atl. 370; *Brown* v. *State,* 87 Wash. 44, 151 Pac. 81, Ann. Cas. 1917D 604.

This being the case, and the finding of fact in regard to the intent of the testator being reasonably sustained by the evidence, the court properly drew the conclusion of law that the deceased died intestate, and appointed an administrator.

The order appealed from is affirmed.

ROSS, C. J., and McALISTER, J., concur.