211 P.2d 815

### In re GARY'S ESTATE.
### DE LANEY v. GARY.

No. 5049.

Supreme Court of Arizona.

Oct. 31, 1949.

230

Morgan & Locklear, of Prescott, attorneys for appellant.

Charles E. McDaniel and John R. Franks, of Prescott, attorneys for appellee.

DE CONCINI, Justice.

This is an appeal from an order and judgment of the trial court denying the petition of plaintiff and granting judgment in favor of the defendant.

The facts as testified to by appellant, plaintiff below, and her uncle are as follows: Katie Gary De Laney (appellant) was born out of wedlock in Dixon County, Tennessee, in 1895. Deceased, Ambrose Gary, hereafter known as deceased, was her natural father. For about ten years after the birth of appellant decedent took

no notice of her and so far as the records disclose made no claim that he was her father. However, appellant's mother's family knew that he was her father.

When appellant was about ten years of age, decedent went to appellant's grandmother and her uncles with whom she had been living since her birth and stated to them that he was her father; that he felt he owed her the duty of supporting and educating her. He said he desired to do so as well as have her inherit his estate or a child's share of his estate. In order that he might accomplish this end he asked that he be permitted to adopt her and let her take his name. The grandmother and the uncle then living with the grandmother, as well as another uncle who had married and lived in the neighborhood, refused to accede to the request. Deceased made similar requests extending over a period of five to six months and they finally agreed with decedent that he might adopt appellant on the conditions that he stated, that is, that she was to assume his name, that he was to be responsible for her support and education and that she was to inherit his estate or a child's share thereof. Appellant's mother died when appellant was only three or four years old.

Decedent was working with the Western Union Telegraph Company at the time as a lineman and lived in railroad cars that were transported from place to place in that section of the country. He arranged with appellant's grandmother for appellant to continue to live with her and paid her $10 per month for appellant's support, also brought her clothing etc. He took her on trips with him. She gave him filial affection, devotion, association and obedience. This arrangement continued for approximately two years when decedent discontinued such support and abandoned the appellant. Deceased then married a young woman in the community and moved West. Appellant wrote him on several occasions and endeavored to ascertain why he had abandoned her, but she received no response. On one occasion she sent her picture to him by registered mail and received a registered receipt, but heard nothing from him.

Decedent's first wife died, and subsequently, in 1923, he married Ella Gary, appellee herein, in Tuscon, Arizona. At the time of their marriage they each had some small amount of money which they used jointly in purchasing a place, and at the time of decedent's death in the latter part of 1945 or the early part of 1946 they had accumulated community property of the appraised value of approximately $25,000. The decedent executed a will in 1924 which was admitted to probate in the probate court of Yavapai County, February 15, 1946, in which he devised to his wife all of his property of every kind and character, except that he made a special bequest to appellant in the sum of $10.

Appellant brought this action to revoke the will and to have the oral agreement be-

tween her and her grandmother and decedent relating to her adoption specifically enforced.

Appellant introduced a copy of deceased's petition over his signature for adoption in the Tennessee courts, a portion of which is as follows: " * * * Your petitioner as the father of said girl, feels it is his duty to take charge of it, feed, clothe, educate and raise it, as his legal daughter and make her his legal heir that she may inherit his estate * * *."

Appellant testified that she was present when the deceased had the conversation with her grandmother and he said he wanted "to feed and clothe and educate me and make me his heir and that I should inherit a child's part at his death." She repeated practically the same testimony several times during her examination.

Appellant's uncle who also was present at the time of the alleged conversation testified that deceased wanted to adopt her so that "she could inherit anything he possessed" and deceased said "and make her my lawful child so that she can inherit what is coming to her at my death" and again that deceased said, "he wanted her to inherit all of the child's part as it was his duty as he owed it to her." On re-cross-examination he testified the deceased said "I want to clothe this child and school her and see that she is cared for and make her my heir as a child's part" and further the deceased said that he wanted to "take care of the child and make her his lawful heir so that the child would inherit her part of the estate."

The only conflict in the testimony was whether she was to inherit his estate or "a child's part thereof."

■ We do not view that as a serious conflict because they amount to the same thing, there being no other children to inherit. Furthermore when one considers the age of the appellant at the time the contract was made, the age of appellant's uncle testifying of an event that happened forty-two years before, and that they are both corroborated by deceased's application to adopt wherein he states he wanted to " * * * make her his legal heir that she may inherit his estate * * *", it is apparent there is no serious conflict. If there were other children or other intervening equities paramount to appellant's interest they would be protected, in that in no event could appellant inherit more than a child's part. Bedal v. Johnson, 37 Idaho 359, 218 P. 641.

Appellee, widow of the deceased, offered no evidence in the case except that she helped her husband, the deceased, to accumulate and care for their community property.

Appellant DeLaney raises two assignments of error, supported by four propositions of law.

"First, the lower court erred in rendering judgment for the appellee for the reason

that the appellant established by uncontradicted evidence a parol contract entitling appellant to a child's part of her deceased father's estate.

"Second, the lower court erred in rendering judgment for appellee for the reason that appellant established by uncontradicted evidence her complete performance of the contract, and that the consideration furnished by appellant requires enforcement of the agreement in order to meet the ends of equity and justice in this case."

We are in accord with appellant's view.

Appellee interposed six defenses in the trial court and six propositions of law in defense of this appeal, which will be disposed of as follows:

1. Appellee contends that when a contract is indefinite and uncertain a court of equity will not decree specific performance.

We are agreed with that statement, but cannot agree that it is applicable here. In this case the contract was established by uncontradicted evidence of two persons, and corroborated by the signed application of the deceased for the adoption of appellant, stating that she would inherit his estate. Such evidence is neither indefinite nor uncertain.

2. The trial court is the judge of witnesses' credibility and the weight of their evidence.

With this too we agree. We recognize that the trial court is not bound to accept the uncontradicted evidence of an interested party. Lentz v. Landers, 21 Ariz. 117, 185 P. 821; Silva v. Traver, 63 Ariz. 364, 162 P.2d 615. However, there are exceptions as where the interested party is corroborated. We heretofore held "but they (triers of the facts) may not arbitrarily reject uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances of the case casts suspicion thereon." Otero v. Soto, 34 Ariz. 87, 267 P. 947, 949; Ison v. Western Veg. Dist., 48 Ariz. 104, 59 P.2d 649; Crozier v. Noriega, 27 Ariz. 409, 233 P. 1104; Equitable Life Assur. Soc. of United States v. De Johnson, 36 Ariz. 428, 286 P. 817. We further held "for the commission (triers of fact) may not arbitrarily disregard the only reasonable inference which can be drawn from uncontradicted testimony." Wiggins v. Pratt-Gilbert Hardware Co., 48 Ariz. 375, 62 P.2d 124, 126. Where evidence of an interested witness is corroborated by a disinterested witness, a rejection of that evidence amounts to arbitrary action by the court. In the instant case we have appellant's testimony corroborated by her uncle and by the signed application of deceased for adoption of appellant. The latter instrument certainly would qualify as "disinterested corroboration."

It is the law of this jurisdiction where no request for findings of fact was timely made that the judgment must be affirmed if supported by the evidence. Tom

234

Reed Gold Mines Co. v. United Eastern Min. Co., 24 Ariz. 269, 209 P. 283; Phoenix Safety Inv. Co. v. James, 28 Ariz. 514, 237 P. 958; Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693. In discussing findings of fact this court said:

"In determining the nature of these findings we must consider the purpose of making them at all. Obviously their only value is to make it possible for the appellate court to determine the theory upon which the trial court reached its judgment, so that it can be decided whether the judgment as a matter of fact and law, is sustained by the record. We have consistently held that, when a trial court returns a general judgment without findings of fact, if there is any theory of the case upon which the judgment can be sustained and any reasonable evidence in the record supporting such theory, we will assume that the trial court has adopted that theory and believes the evidence supporting it, and that we will not disturb its judgment because other evidence in the record supports a theory of the case requiring a different judgment as a matter of law. It follows necessarily as a corollary that, if it appears affirmatively in the record that the facts found by the trial court, and on which its judgment is expressly based, are not sustained by the evidence, or as a matter of law would not sustain its judgment, we should reverse the case. * * *" State Tax Com. of Arizona v. Magma Copper Co., 41 Ariz. 97, 15 P.2d 961, 962.

We believe that there was evidence in this case to sustain appellant's theory of the case. If the evidence is uncontradicted, this court is not bound by the conclusions of the lower court in deciding against the evidence. In re Taylor's Estate, 56 Ariz. 211, 106 P.2d 492; McFadden v. Watson, 51 Ariz. 110, 74 P.2d 1181; Rowe v. Goldberg Film Delivery Lines, 50 Ariz. 349, 72 P.2d 432; Phen v. All American Bus Lines, 56 Ariz. 567, 110 P.2d 227; Illinois Bankers' Life Ass'n v. Theodore, 44 Ariz. 160, 34 P.2d 423.

In this case we are at a loss to know whether the trial court gave his judgment to appellee on the basis of a question of law or on the insufficiency of the evidence. In cases involving both questions of law and fact like the instant case and in which there are no findings of fact nor indication by the lower court upon what point it decided the case, we feel justified in assuming that when the evidence is legally sufficient to prove appellant's complaint is reasonable, is corroborated by a disinterested evidence and is not contradicted by appellee as in this case, that the lower court decided the case on some question of law and not on the insufficiency of the evidence.

3. The alleged contract is wholly lacking in consideration.

We cannot agree with this contention. This court has held that where the adopted child has fully fulfilled an adop-

tion contract by means of the association, filial affection, obedience, and services contemplated thereby, he is entitled to the fruits of the contract. An adopted child who has fully performed an adoption contract is entitled to the fruits thereof, notwithstanding the adoption contract was made by an adopting parent with an orphanage "institution." In re Biehn's Estate, 41 Ariz. 403, 18 P.2d 1112.

4. That appellant's action is barred by the Statute of Frauds, Section 58-101, A.C.A.1939. "No action shall be brought in any court in the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the parties to be charged therewith, or by some person by him thereunto lawfully authorized: * * *. 8. Upon an agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will."

Appellant fully performed her part of the contract until she was abandoned by deceased Gary. Appellant's grandmother, in whose care appellant was, surrendered legal and technical custody to the deceased based on his promises and the decree of adoption, but kept actual custody of appellant at request of deceased. When a party fully performs his part of a contract the action is taken without the

Statute of Frauds. This court said in Sullivan v. Townsend, 30 Ariz. 63, 243 P. 913, 915: "This court is of the opinion that said alleged oral agreement is within the statute of frauds, but was taken without the operation of the statute of frauds because of the alleged complete performance by plaintiffs herein." In that case the oral agreement was to leave by will certain property to the children of deceased as in the instant case.

This court in construing Section 58-101, supra, has held in other cases not involving wills that "One of these exceptions is that if the contract had been fully performed by one of the parties, then that party may bring an action on the contract against the other, without the necessity of showing a written contract." Waddell v. White, 51 Ariz. 526, 78 P.2d 490, 496. See also Condon v. Arizona Housing Corp., 63 Ariz. 125, 160 P.2d 342.

5. That a judgment for appellant would be unconscionable because it would be prejudicial to appellee, an innocent third party.

With this we cannot agree because appellee's property is untouched. She still has her one-half of the community property. It is only deceased's one-half interest in the property that appellant can inherit as either his estate or a child's share thereof. If deceased had willed his community property to an entire stranger

his widow, the appellee, could not prevail in an action to set aside such a devise on the ground of it being unconscionable. The will in such event would be valid and beyond the court's power to change.

6. Appellee's last proposition to sustain her position is that appellant, being an adopted child, could be disinherited as any natural child. If this were an ordinary adoption of course this would be true, but this adoption was predicated on a contract with a promise by deceased to leave a child's share of his estate to appellant. The Idaho Supreme Court said: " * * * Conceding that a parent may disinherit a child, we do not think he is at liberty to disinherit a child under an express contract of adoption wherein he agrees to make her his lawful and legitimate heir. * * *" Bedal v. Johnson, 37 Idaho 359, 218 P. 641, 650. In Biehn's Estate, supra [41 Ariz. 403, 18 P.2d 1115] quoting 1 C.J., sec. 21, p. 1377, the court said: " * * * an agreement, either express or implied, to give the adopted child a certain portion of the adoptive parent's property will be enforced."

We hold the appellant's assignments of error are well taken. The judgment is reversed in accordance with the principles herein enunciated.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.